564 A.2d 907

James F. McCORMICK and Diane McCormick, his wife, Appellants,

v.

The COLUMBUS CONVEYER COMPANY, The Rust Engineering Company, and Sordoni Construction Company, Appellees.

Supreme Court of Pennsylvania.

Argued Jan. 19, 1989.

Decided Oct. 13, 1989.

C. Kent Price, Harrisburg, for appellants.

Stanley J.A. Laskowski, Harrisburg, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

ZAPPALA, Justice.

Appellant James F. McCormick was permanently partially disabled when his right arm caught in the belt conveyor of a coal delivery system while he was working in the power-house at Bucknell University. He and his wife brought this products liability action alleging that Columbus Conveyor Company, Rust Engineering Company, and Sordoni Con-struction Company "jointly and severally designed, manu-factured, and sold" the system, and that its defective design and manufacture was the direct and proximate cause of McCormick's injury.

Rust and Sordoni filed motions for summary judgment, asserting that the twelve year statute of repose set out in 42 Pa. C.S. § 5536 barred the action. In that section, the General Assembly has provided:

(a) General Rule.—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construc-tion of such improvement to recover damages for:

(1) Any damages in the design, planning, supervision or observation of construction or construction of the improvement.

(2) Injury to property, real or personal, arising out of any such deficiency.

(3) Injury to the person or for wrongful death arising out of such deficiency.

(4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).

The coal delivery system was put into place when the powerhouse, which provides heat and hot water for sixty-eight buildings on the University campus, was constructed in 1948. McCormick's accident occurred in 1982, obviously

more than twelve years after the completion of construction. The Dauphin County Court of Common Pleas determined that the coal delivery system was "an improvement to real property" and that Rust and Sordoni "perform[ed] or furnish[ed] the design, planning, supervision or observation, or construction" of the system. Accordingly, the court granted summary judgment in favor of these two defendants, a ruling the Superior Court affirmed on appeal.

Thereafter, this case was transferred to Union County, where Columbus filed a motion for summary judgment based on Section 5536. The court granted the motion, following the prior ruling that the system was an improvement to real property and finding that Columbus was within the class of persons protected by the statute. Superior Court also affirmed this decision. 369 Pa.Super. 655, 531 A.2d 531 (1987).

■ The appellants first argue that the statute of repose does not bar the action against Columbus because the belt conveyor on which McCormick was injured was a "product," not an "improvement to real property." They describe the conveyor as a discrete piece of equipment serving a particular function in the overall system of machines, and argue that it is not inextricably interwoven into the structure of the building. The appellants also suggest that as to the manufacturer Columbus, the conveyor retained its status as a "product" even if it became an "improvement to real property" by virtue of being incorporated into the power plant by third parties.

Superior Court rejected this claim because it had previously held, in the appeal as to Rust and Sordoni, that the coal delivery system was an improvement to real property, thereby establishing the law of the case. We agree with this conclusion. "It is hornbook law that issues decided by an appellate court on a prior appeal between the same parties become the law of the case and will not be reconsidered on a second appeal." *Commonwealth v. Tick*, 431 Pa. 420, 427, 246 A.2d 424, 427 (1968).

■ Even were we to examine the question anew, however, we would reach the same result. Although the McCormicks cite a number of cases from other jurisdictions for the proposition that belt conveyors are "products" for the purpose of products liability personal injury actions, by and large these cases did not involve the question whether the conveyors were improvements to real property. The courts thus did not decide, as the appellants' argument implies, that belt conveyor systems are products *and not* improvements to realty.

Similarly, in cases where improvements to realty were nevertheless treated as products for purposes of Restatement (Second) of Torts Section 402A, nothing turned on the fact that the items were improvements to realty. The courts merely rejected the defendants' arguments that improvements to realty could not be considered products. These decisions are, therefore, inapposite and of little persuasive value. *Black's Law Dictionary* defines "improvement" as

[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes....

*Id.*, at 682 (5th ed. 1979). The Superior Court has previously relied on this definition in construing § 5536, *Mitchell v. United Elevator Company*, 290 Pa.Super. 476, 434 A.2d 1243 (1981), which comports with the ordinary and common usage of the word. See 1 Pa.C.S. § 19. In this light, we find that the Dauphin County court was correct in determining as a matter of law that the coal delivery system at issue in this case was an improvement to real property, and the Union County court and Superior Court were correct in following that ruling as the law of the case.

■ The appellants also argue that even if the coal delivery system is an improvement to real property, Columbus is not within the class of persons the statute was enacted to protect—i.e., architects, engineers, and contrac-

tors.[1] Superior Court rejected this argument on the authority of *Leach v. Philadelphia Savings Fund Society*, 234 Pa.Super. 486, 340 A.2d 491 (1975), which dealt with the virtually identical predecessor statute. There the court stated

The Pennsylvania statute identifies its class not by the status or occupation of its members but rather by the contribution or acts done in relation to the improvement to the real property. Thus the statute immunizes from liability after 12 years "any" person lawfully performing or furnishing such activities. The word "any" is generally used in the sense of "all" or "every" and its meaning is most comprehensive.

*Id.*, 234 Pa.Superior Ct. at 490, 340 A.2d at 493. In following this ruling and looking to whether Columbus performed or furnished the design, planning, supervision of construction, or construction of an improvement, rather than limiting the inquiry to whether Columbus was an architect, engineer, or contractor, the Superior Court did no more than apply the statute as written. This was not error.

■ The appellants also make a similar, though less specific, argument that the statute of repose was not intended to accord protection to the manufacturer of a product that happens to be incorporated by others as an improvement to real estate. Such an interpretation, it is said, would eviscerate much of products liability law in Pennsylvania.[2]

1. To the extent that this argument rests on the remarks of one member of the House of Representatives speaking in support of the Act, it is to be noted that what is said in debate, the remarks and understanding of individual legislators, is not relevant in ascertaining the meaning of a statute. See, *In re Martin's Estate*, 365 Pa. 280, 74 A.2d 120 (1950).

2. We note that in *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978), we accepted *arguendo* the plaintiff's argument that the statute distinguished between builders and suppliers, the former having the benefit of the twelve year period, the latter not. We held that such a distinction did not create a "special law" in violation of Article III, Section 32 of the Pennsylvania Constitution since it was rationally based on real differences. In support of this conclusion we observed

This argument portraying Columbus as simply the manufacturer of a particular machine which is related to the realty only by the fact that it is bolted to the floor, is contrary to the allegations in the complaint and the plaintiffs' answers to interrogatories. As previously noted, the McCormicks alleged that Columbus, Rust, and Sordoni "jointly and severally designed, manufactured, and sold" the machine. In response to interrogatories propounded by Columbus, the plaintiffs stated

the design and manufacture of the product in question cannot be said to be the sole effort of any one defendant. Each defendant substantially participated in different phases of the design and manufacture of this product. The efforts of all three defendants coalesce, and are inseparably intertwined, in the design, manufacture, and sale of this product.

R. 166a.

It is abundantly clear from the record that Columbus did more than supply a standard piece of equipment, indistinguishable from any other it mass-produced, that by chance became affixed to the University's property. Using specifications and a general layout provided by Rust Engineering, Columbus devised a coal delivery system to be integrated into the construction of the new power plant that was uniquely suited to that site. On the facts in this record, there is no question that Columbus was engaged in the design of an improvement to real property and thus was entitled to the benefit of the statute of repose. Therefore, this is not an appropriate case to address the appellants' argument that Section 5536(a) does not apply to manufacturers whose products are incorporated into real estate by others as improvements; by the plaintiffs' own assertions,

Suppliers, who typically produce items by the thousands, can easily maintain high quality—control standards in the controlled environment of the factory. A builder, on the other hand, can pretest his designs and construction only in limited ways—actual use in the years following construction is their only real test.

*Id.*, 476 Pa. at 277, 382 A.2d at 719. We did *not* decide the question whether "suppliers" could ever be entitled to the protection of the statute.

Columbus is not such a manufacturer and the coal delivery system is not such a product.

The order of the Superior Court is affirmed.

STOUT, former Justice, did not participate in the decision of this case.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

LARSEN, Justice, dissenting.

I dissent. I do not believe that the twelve year statute of repose set out in 42 Pa.C.S. § 5536 applies to designers and manufacturers of products that are incorporated into the construction of improvements to real property. Section 5536, Construction projects, provides, in relevant part, as follows:

> **(a) General rule.**—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of *an improvement to real property* must be commenced within 12 years after completion of construction of such improvement to recover damages ...

(emphasis added) A manufacturer does nothing other than supply the component products for an improvement to real property. The fact that a manufacturer *designs and plans* those component products is irrelevant under the statute, since the statute is concerned with only those persons involved in the design, planning, supervision, or construction of the *improvement to real property itself.* Thus, the clear and unambiguous language of § 5536 establishes that manufacturers who supply defective *products* that are incorporated into an improvement to real property are not entitled to that statute's benefits.[1]

---

1. Although this Court did not "decide the question whether 'suppliers' could ever be entitled to the protection of the statute," maj. op. at 910 n. 2, in *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978), the case does provide the basis for distinguishing

Appellants James F. and Diane D. McCormick have consistently alleged that appellee Columbus Conveyor designed, manufactured, and sold the *product* that caused Mr. McCormick's injuries. Thus, this *is* an appropriate case to address their argument "that section 5536(a) does not apply to manufacturers whose products are incorporated into real estate by others as improvements." Maj. op. at 526. That the engineer and construction company involved in the project were also alleged to have designed, manufactured, and sold the product at issue is irrelevant to the issue of the *manufacturer's* liability and the applicability of the statute of repose.

Accordingly, I would reverse the order of Superior Court affirming the entry of summary judgment, and I would remand to the Court of Common Pleas for further proceedings.

PAPADAKOS, J., joins in this dissenting opinion.

between "suppliers" and "builders" under our statute of repose. In that case, this Court stated that:

> [E]very building is unique and far more complex than any of its component parts.... The Legislature can rationally conclude that the conditions under which builders work are sufficiently difficult that limitations should be placed on their liabilities, but not on the liabilities of suppliers.

*Id.,* 476 Pa. at 277, 382 A.2d at 719.

The within appellee, Columbus Conveyor, designed a product that was custom built to fit into a particular space, as specified by the engineering firm that designed the power house at Bucknell University. That customized product, however, was manufactured in the "controlled environment of the factory," *id.,* and was therefore readily subject to quality-control standards in a way that the building itself was not so subject.