587 A.2d 845

**Robert J. HANNON, Appellant,**

v.

**CITY OF PHILADELPHIA and Thomas J. Littel, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided Feb. 25, 1991.

Alan Starker, with him, Sol H. Weiss, Anapol, Schwartz, Weiss & Schwartz, Philadelphia, for appellant.

Audrey Greenhall, with her, Cahrisse Lillie, City Sol., Norma S. Weaver, Chief Deputy in Charge of Claims, and Miriam B. Brenaman, Deputy Sol. for Appeals, Philadelphia,

for City of Philadelphia. Nicholas Poduslenko, with him, E. Parry Warner, Obermayer, Rebmann, Maxwell, and Hippel, Philadelphia, for Thomas J. Littel.

Before COLINS and KELLEY, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Robert J. Hannon appeals an order of the Philadelphia County Court of Common Pleas (trial court) denying him post-trial relief and delay damages. Finding none of Hannon's arguments persuasive, we will affirm the trial court's order.

As we stated in a previous appeal:

This matter arose out of a single vehicle accident which occurred on November 25, 1981, on Bells Mill Road, a curving two-lane road, located in the northwest part of the City. Hannon worked with Thomas Littel [co-appellee herein] and the two carpooled to and from their place of employment. The men traveled Bells Mill Road on a daily basis and Littel was driving on the day of the accident. At approximately 4:30 p.m. on November 25, 1981, Littel and Hannon left work to go home. On their way they stopped and had dinner at the Fiesta Motor Lodge where Littel testified he had one beer. They then proceeded to a bar where Littel testified he consumed approximately two more beers. After that, Littel stated he and Hannon drove back to the Fiesta Motor Lodge where he had two or three more beers. Littel estimated that he and Hannon left the Fiesta Motor Lodge around 10:00 p.m.

On the way home, Littel testified he was attempting to light a cigarette when the car he was driving struck a concrete headwall. The headwall was located approximately 3½ feet off the side of the road and had been built in 1914 as part of a culvert system to control water run-off.

Hannon sustained serious injuries in the accident. He subsequently brought a negligence action against Littel

and an action against the [City of Philadelphia (City), co-appellee herein,] for negligent maintenance of streets and real property pursuant to Sections 8542(b)(3) and (6) of the Judicial Code (Code), 42 Pa.C.S. § 8542(b)(3), (6). After the trial, the jury returned a $1,000,000.00 verdict in favor of Hannon, finding Littel 72% negligent and the City 28% negligent. The City filed several post-trial motions which were denied in part and granted in part. The trial court granted the City's post-trial motion to mold the verdict to conform with the $500,000.00 cap under the Code [Section 8553(b) of the Code, 42 Pa.C.S. § 8553(b)] as well as its motion to deny delay damages on the basis that they were waived.

*Hannon v. City of Philadelphia*, 120 Pa.Commonwealth Ct. 383, 384–385, 548 A.2d 693, 694 (1988), *petition for allowance of appeal denied*, 522 Pa. 598, 562 A.2d 322 (1989) (hereinafter referred to as *Hannon I*).

Cross appeals were subsequently taken by Hannon and the City. We reversed the trial court and remanded for a new trial. *Hannon I*.

On remand, the case was retried to a $920,000.00 verdict. Littel was found to be 75% negligent, the City 0% negligent and Hannon 25% contributorily negligent.

Hannon thereafter moved for judgment notwithstanding the verdict or, in the alternative, a new trial, and delay damages, all of which were denied by the trial court in an order dated May 21, 1990. Hannon now seeks our review of this order.

Hannon first contends that the trial court committed prejudicial error by permitting testimony of his intoxication because it was not probative and was highly prejudicial. This issue, however, was addressed and decided by this Court in *Hannon I* and, of course, issues decided by an appellate court on a prior appeal between the same parties become the law of the case and will not be reconsidered on a subsequent appeal. *McCormick v. Columbus Conveyer Co.*, 522 Pa. 520, 564 A.2d 907 (1989). In any event, we find

the evidence presented here probative of the issues of Hannon's credibility and contributory negligence.

 Hannon likewise contends that the trial court committed prejudicial error by permitting testimony of Littel's intoxication. "[P]roof of intoxication is relevant where reckless or careless driving of an automobile is the matter at issue [;however,] the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which proves unfitness to drive." *Gallagher v. Ing*, 367 Pa.Superior Ct. 346, 350, 532 A.2d 1179, 1181 (1987), citing *Fisher v. Dye*, 386 Pa. 141, 148, 125 A.2d 472, 476 (1956).

Here, the City called various witnesses whose testimony, in our opinion, was sufficient to establish that Littel's intoxication rendered him unfit to drive. Among the witnesses testifying as to their observations of Littel on the night in question was a registered nurse, Karen Lynne Morasco; Littel's treating physician, Dr. Steven Harris Whitenack; an emergency room secretary, Mary Beth Hogan; and a police officer, Michael Cahill.[1]

Morasco testified that Littel admitted drinking more than a six-pack of beer, used abusive and foul language, screamed at her most of the time, was otherwise loud and uncooperative, smelled of alcohol, was incoherent and rambled. N.T. 10/10/89, pp. 16–17, 19, 23–24. She further testified that his speech was slurred and that he exhibited behavior demonstrating a disregard for his own well-being by repeatedly ripping off his cervical collar after being warned of the possible dire consequences of doing so. N.T. 10/10/89, pp. 17–18, 23. Based upon these observations, she opined that Littel was intoxicated to the degree that he was unfit to drive. N.T. 10/10/89, pp. 19, 23–25.

1. As noted by the trial court, "[i]ntoxication is clearly a matter of common observation and lay people may tender opinions on the issue." *Hannon v. City of Philadelphia* (No. 4538 July Term 1982, filed May 21, 1990), slip op. at 5, citing *Commonwealth v. Reynolds*, 256 Pa.Superior Ct. 259, 389 A.2d 1113 (1978). This, of course, applies equally to hospital personnel and police officers.

Dr. Whitenack similarly testified that Littel was quite difficult, used foul language, was abusive to the hospital staff and refused to keep his cervical collar in place. N.T. 10/11/89, p. 97. Dr. Whitenack also stated that he noticed an obvious smell of alcohol on Littel's breath, and when combined with his appearance the following morning, it became clear to him that Littel was quite inebriated on the night in question. *Id.* It was Dr. Whitenack's opinion that Littel definitely should not have been driving. N.T. 10/11/89, pp. 98–99.

Hogan likewise testified to Littel's abusive and foul language and uncooperative conduct. N.T. 10/10/89, pp. 45, 55. Hogan also remarked that Littel refused to keep his cervical collar in place and had a strong smell of alcohol on his breath. N.T. 10/10/89, p. 49. Like the others, it was her opinion that Littel was intoxicated and unfit to drive. N.T. 10/10/89, pp. 46, 49–50, 66.

Cahill also testified to Littel's abusive and uncooperative conduct and repeated efforts to remove his cervical collar. N.T. 10/10/89, pp. 96, 100. Cahill noticed as well that Littel's speech was slurred and his eyes were bloodshot and that he had a strong odor of alcohol on his breath. N.T. 10/10/89, p. 97. He likewise was of the opinion that Littel was intoxicated and unfit to drive. N.T. 10/10/89, pp. 98–99.

Corroborated testimony that a party had been heavily drinking beer before an accident and whose breath smelled strongly of beer, whose speech was slurred and whose alertness was unusually low after the accident was held to be "much more than a suggestion of intoxication" and, therefore, properly admitted into evidence. *Ackerman v. Delcomico,* 336 Pa.Superior Ct. 569, 575, 486 A.2d 410, 413 (1984). The evidence here, consisting of the testimony recited above, is clearly comparable to that presented and found admissible in *Ackerman.* Accordingly, we reject Hannon's contention that the trial court committed preju-

dicial error by permitting testimony concerning Littel's intoxication.[2]

■ Likewise, we reject Hannon's additional contention that the trial court committed prejudicial error by disallowing evidence of a prior accident. In *Hannon I*, we stated that

> [t]he prior accident ... was caused by illegal behavior on the part of an approaching motorist and ice along the side of the roadway. These circumstances are in no way related to the accident in question and clearly may not serve as notice to the City that the headwall itself is a dangerous condition of the roadway. Therefore, the trial court erred by admitting evidence of that prior accident.

*Id.* 120 Pa.Commonwealth Ct. at 387, 548 A.2d at 695.

In the instant appeal, however, Hannon asserts that a report evidencing the prior accident should have been permitted for purposes of impeaching a statement made by one of the City's witnesses that there was no demonstrated hazard at the site of the headwall and defense counsel's remark that there were no previous accidents at this site.

Preliminarily, we note that Hannon has misstated defense counsel's remark. Defense counsel in fact remarked that "there's never been another accident exactly similar to this from 1914 to 1981 when these two gentlemen [Hannon and Littel] hit the wall." N.T. 10/3/89, pp. 132–133.

Having corrected this misstatement and having considered defense counsel's remark as actually phrased as well as the statement made by the City witness, we cannot construe either as stating that there were no previous

2. We note in passing, and in response to a statement contained in Hannon's brief, that the evidence of intoxication submitted by the City is not rendered inherently unreliable and, therefore, inadmissible because it did not rule out the possibility that Littel's conduct was due to severe injuries. Such failure relates to the weight to be given the evidence by the jury; not to its admissibility. *See Commonwealth v. Reynolds*, 256 Pa.Superior Ct. 259, 389 A.2d 1113 (1978). Moreover, some of the testimony heard by the jury described Littel's injuries and, therefore, the jury was able to take such injuries into consideration in weighing the evidence.

accidents at this site. Absence of a demonstrated hazard at this site merely suggests that there have been no accidents at this site which indicate that the headwall presented a hazard [3]; not that there have been no accidents at all due to other factors, such as ice on the roadway or the recklessness of another driver. Likewise, the fact that there have been no accidents similar to that here does not suggest that there have been no accidents at all.

■ Hannon also attempts to circumvent our ruling in *Hannon I* as to the prior accident by claiming the existence of "new evidence" which relates to the City's procedure for determining whether a roadway condition is or is not dangerous. This "new evidence," according to Hannon, indicates that the exact circumstances by which an accident occurs are not reported to the City in the first instance and that only the date, time and location are first reported, thereby rendering the similarity or dissimilarity of the accidents irrelevant for purposes of notice. Hannon claims that receipt of the report involves notice while the subsequent decision of whether to maintain the headwall involves the issue of negligence.

From our understanding of Hannon's argument, our ruling in *Hannon I* as to the prior accident would somehow be affected by this "new evidence." We disagree.

In *Hannon I*, we found that the prior accident was not attributable to the headwall and was, therefore, irrelevant and inadmissible. Information, including the report of the prior accident, is still irrelevant and inadmissible, regardless of the procedure used by the City to assess accident sites.

As stressed in *Hannon I*, evidence of *similar* accidents at substantially the same place *and* under the *same or similar* circumstances may be admissible to provide constructive notice of a dangerous condition. Here, we found that the prior accident was not similar. Because there can

3. As we noted in *Hannon I*, "Hannon's theory of the case against the City was that the curvature of the road and proximity of the headwall to the roadway had caused Littel's vehicle to crash into the headwall." *Id.*, 120 Pa.Commonwealth Ct. at 386–387, 548 A.2d at 695.

be no notice of a dangerous condition unless the accidents are similar, we reject Hannon's argument that the similarity of the accidents in question is irrelevant to the issue of notice and conclude that our previous ruling on this issue in *Hannon I* is as applicable now as it was then and, as such, has become "the law of the case." [4] *McCormick.*

■ Hannon also claims that the trial court should have declared a mistrial when one of the City's witnesses blurted out Littel's unconfirmed, unsubstantiated blood-alcohol content. Defense counsel, however, did not request or exploit this information nor introduce evidence regarding the improper reference and the jury was promptly given a corrective instruction [5] to which Hannon's counsel did not object.

Where, as here, counsel did not deliberately elicit or exploit an improper reference from a witness and introduced no evidence regarding the improper reference, a prompt curative instruction has been found to be sufficient to negate any prejudice which may have resulted. *See Commonwealth v. Haag*, 522 Pa. 388, 562 A.2d 289 (1989). Accordingly, the trial judge committed no error in refusing to grant a mistrial. *Id.*

■ Hannon next alleges that the trial judge's charge as to a driver's duty not to drive while intoxicated was error and that the trial judge erred in not instructing the jury as to his requested point for charge. A trial judge, of course,

4. We note in passing that our decision in *Hoffmaster v. County of Allegheny*, 121 Pa.Commonwealth Ct. 266, 550 A.2d 1023 (1988) is not contradictory to that made in *Hannon I* as to the issue of admissibility of notice evidence, as claimed by Hannon. In *Hoffmaster*, the plaintiff sustained injuries when the car he was driving slid on a patch of ice. The notice testimony therein indicated that a prior accident may have been caused at this same site due to ice on the roadway. Accordingly, the cause of the accidents was similar, unlike the case *sub judice.*

5. The trial judge advised the jury as follows:
 You are to strike from your mind any mention of the specific blood alcohol level. You will not be asked to decide that as part of this case and it is not evidence as part of this case, so you will strike it completely from your mind and we will go back to the testimony as you heard it before that particular mention.
 N.T. 10/10/89, pp. 22–23.

has wide latitude as to the manner in which he or she charges the jury and may use any language he or she chooses provided that the language chosen fully and adequately conveys the applicable law. *Berman v. Radnor Rolls, Inc.*, 374 Pa.Superior Ct. 118, 542 A.2d 525 (1988). We are likewise mindful that when reviewing a claim that a trial judge improperly instructed the jury, we must view the challenged charge in its entirety, taking into consideration the evidence presented, to determine whether or not error was committed and, if so, whether or not that error was prejudicial to the complaining party. *Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985); *Berman.*

The portion of the trial judge's instruction to which Hannon takes exception reads as follows:

Let us now turn to the duties of the parties and the law as it applies to them.

The Motor Vehicle Code dictates the care required by the parties. If you find any party violated the Code, you may find them negligent. You must then determine if the negligence was a substantial factor.

I'm going to read you now some sections from the Motor Vehicle Code. The Motor Vehicle Code provides:

A person shall not drive any vehicle while, one, under the influence of alcohol to a degree which renders the person incapable of safe driving:

Two, under the influence of any controlled substance to a degree which renders the person incapable of safe driving, or three, under the combined influence of alcohol and a controlled substance to a degree which renders the person incapable of safe driving.[6]

Hearing Transcript 10/12/89, pp. 12–13 (footnote added). Hannon contends that it was error for the trial judge to include provisions from the Vehicle Code in the jury charge, claiming, without citing any authority therefor, that:

**6.** These provisions are found at Section 3731(a) of the Vehicle Code, 75 Pa.C.S. § 3731(a).

(1) there was no evidence offered regarding a violation of this statute;

(2) the statute is penal in nature and, as such, has no applicability in a civil case;

(3) the jury should not have been able to use this statute to determine whether Littel committed a serious traffic offense in order to imply negligence without any proof corroborating the fact that Littel was driving under the influence of alcohol; and

(4) recitation of these provisions served only as a source of confusion.

At the outset, we note that all drivers are required to comply with the provisions of the Vehicle Code. Contrary to Hannon's claims, evidence of violation of a statute, such as the Vehicle Code here, may constitute negligence *per se*, irrespective of the criminal penalties contained therein or whether there has been a conviction thereunder. *See Mecca v. Lukasik*, 366 Pa.Superior Ct. 149, 530 A.2d 1334 (1987). Likewise contrary to Hannon's claims, evidence was presented here from which the jury could infer negligence on Littel's behalf for driving while under the influence of alcohol which rendered him incapable of safe driving. Accordingly, we find no error by the trial judge.

Nor do we find error by the trial judge in refusing Hannon's requested point for charge. Hannon requested that the jury be instructed as follows:

A passenger, such as Robert Hannon, in a driver's vehicle, is not required to exercise the same measure of care as is the driver of an automobile. In this case, Robert Hannon was a passenger in a car driven by Thomas Littel and, absent evidence of Mr. Hannon's knowledge that Mr. Littel was heading towards the concrete abutment [headwall], cannot be bound to anticipate his driver's negligence. *Demaine v. Brillhart*, 224 Pa.Super. 241, 303 A.2d 506 (1973).

As noted by the trial judge, this proposed point for charge is somewhat similar to the imputed negligence charge which we previously held to be prejudicial error.

*Hannon I.* Moreover, as also noted by the trial judge, any contributory negligence on Hannon's behalf revolved around his decision to get into Littel's car; not the issue of whether Hannon was contributorily negligent in causing Littel's car to strike the headwall.[7]

In our view, Hannon's proposed point for charge ignores the actual issue and the law applicable thereto: a passenger may be negligent by exposing himself to an unreasonable risk. *See Hill v. Reynolds*, 384 Pa.Superior Ct. 34, 557 A.2d 759 (1989). This point for charge would thus improperly absolve a passenger from any duty to assess the safety of the circumstances in which he places himself when he entrusts his safety to a driver who he knows has consumed alcohol and who may be impaired. We therefore find no error by the trial judge in refusing to so instruct the jury.

■ Hannon next claims that defense counsel's attempt to elicit information from a witness regarding whether any citations for reckless driving were issued to Littel was prejudicial error and warranted a new trial. A motion for a new trial for improper remarks by counsel is directed largely to the trial judge's discretion. *Stevenson v. Pennsylvania Sports and Enterprise, Inc.*, 372 Pa. 157, 93 A.2d 236 (1952); *D'Angelis v. Zakuto*, 383 Pa.Superior Ct. 65, 556 A.2d 431 (1989). It is an abuse of discretion, however, to refuse a new trial if the remarks are obviously prejudicial. *Stevenson.*

Where, as here, the trial judge determines that instructions to the jury to disregard an improper remark are sufficient to quell any prejudice, an appellate court should be hesitant to reverse inasmuch as the trial judge is in a better position to observe the atmosphere of the trial and determine the effect the remark has had on the jury. *Hill.* In ascertaining whether or not the trial judge abused his or

7. *DeMaine,* the authority cited by Hannon in his proposed point for charge, is inapposite and, therefore, not dispositive of the instant case. Moreover, while a passenger may not be required to exercise the same measure of care as a driver with respect to the operation of a vehicle, as noted above, the issue here did not concern the operation of the vehicle.

her discretion in denying a new trial, the remark must be examined as well as the circumstances under which it was made and the precautions taken to remove its prejudicial effect. *Id.*

Here, the inquiry by defense counsel, to which no response was recorded, occurred near the beginning of a lengthy trial and, although found to have been seeking an inadmissible response, cannot be characterized as wholly irrelevant since it arguably relates, at least tangentially, to the issues of Littel's fitness to drive and both Littel's and Hannon's credibility. Furthermore, defense counsel did not thereafter pursue the inquiry and, more significantly, the trial judge promptly gave a curative instruction advising the jury to strike the question from their minds to which Hannon's counsel did not object, presumably finding the instruction adequate.

In our opinion, given the contents of the inquiry, the fact that no response was recorded and the circumstances under which the inquiry was made, the trial judge's timely instruction was adequate to dissipate any prejudicial effect which may have emanated from the inquiry. In any event, failure to object to this corrective instruction would appear to act as a waiver of the opportunity to argue this issue post-trial. *See DiSerafino v. Bucyrus–Erie Corp.*, 323 Pa.Superior Ct. 247, 470 A.2d 574 (1983).

Hannon's final assertion is that the trial judge erred in refusing to grant his petition for delay damages. This issue, however, was previously decided in *Hannon I*, wherein we flatly stated that the request for delay damages was waived. *Id.* 120 Pa.Commonwealth Ct. at 393 n. 10, 548 A.2d at 697 n. 10.

For the foregoing reasons, we will affirm the trial court's order.

## ORDER

AND NOW, this 25th day of February, 1991, the order of the Court of Common Pleas of Philadelphia County, dated May 21, 1990, is affirmed.