**French v. Commonwealth Associates**

C.P. of Lawrence County, Nos. 10251, 10312 and 10401 of 2003, C.A.

*Daniel I. Herman*, for plaintiffs.

*Michael D. Heintzman* and *Kevin M. Ward*, for defendant United Conveyor.

*Douglas R. Nolin*, for defendant Gilbert/Commonwealth Associates.

MOTTO, *P.J.*, October 2, 2013—Before the court for Disposition are two separate motions for summary judgment brought by defendant United Conveyor Corporation (hereinafter, "United Conveyor"), and defendant Gilbert/Commonwealth Associates, Inc. (hereinafter, "Gilbert"). The plaintiff, Debra French, alleges that under the theories of negligence, negligent design, breach of warranty, and strict liability under Section 402(a) of the Restatement (Second) of Torts, both United Conveyor and Gilbert caused and/or contributed to the death of plaintiff-decedent, Brian P. French. Both United Conveyor and Gilbert argue, inter alia, that the plaintiff's claims against them are barred by Pennsylvania's Statute of Repose, and that those claims should be dismissed as a matter of law. The plaintiff contends that the Statute of Repose is not applicable in this matter, and both defendants' motions should be denied. Both defendants also contend that all claims against them on all theories of recovery must be dismissed because plaintiff cannot prove a claim against them on any theory of liability as a matter of law.

## I. Background

Plaintiff-decedent Brian P. French (hereinafter, plaintiff-decedent French) was a Senior Power Plant Operator employed by the Penn Power Company (hereinafter, Penn Power) at the west Pittsburg Power Plant (hereinafter, WPPP) in West Pittsburg, Lawrence

County, Pennsylvania. On April 9, 2001 plaintiff-decedent French died while attempting to remove a piece of metal that had become lodged within a "dog box," a component of WPPP's Boiler units. For purposes of explaining the circumstances surrounding plaintiff-decedent's death, a brief description of WPPP, its facilities and equipment, and the mechanisms of those facilities and equipment will be provided.

WPPP is a coal burning power plant. WPPP houses five boilers, or "units," although only units 3, 4, and 5 were operational at the time of plaintiff-decedent's death. Each Unit has an ash pit and a specifically designed Ashpit Rejection System (hereinafter, "ARS"), that is designed to carry the ash away from the unit.

Two types of ash are created when coal is burned in a unit: fly ash and bottom ash. Fly ash is created when ash travels upward within a boiler, whereas bottom ash falls into the bottom of the boiler. These two types of ash require their own specific systems for removal within an ARS. The bottom ash removal system removes ash from the bottom of the boiler through the use of pressurized water, which moves the ash from the bottom of the boiler to a "hopper." The hopper consists of a water and ash tank. The tank sits beneath the boiler and collects the ash that is created by the boiler.

Attached to the tank is a bottom ash hopper discharge enclosure, commonly called a "dog box." At the bottom of the dog box is an ash grinder which grinds and pulverizes the ash that is collected in the dog box. Water is pumped into the dog box and mixes with the ash to create slurry, which is then pumped out of the dog box and carried away

into a slurry storage pond outside of the plant.

In 1961, Commonwealth Associates, Inc. (later known as Gilbert/Commonwealth Inc. of Michigan) was retained by Penn Power to design unit 5. Commonwealth Associates provided the general design specifications for a system into which the ARS was to be integrated and utilized in the coal burning, electrical-generation processes within unit 5. Commonwealth Associates solicited bids to design the ARS, and United Conveyor was retained to design the system, including the dog box. Unit 5 became operational in 1964.

In 1973, Gilbert Associates, Inc. purchased Commonwealth Associates, Inc, and became a subsidiary of Gilbert Associates, Inc. Gilbert Associates, Inc. changed its name to Gilbert/Commonwealth Inc. in 1984. Moreover, Commonwealth Associates, Inc., the Michigan corporation responsible for designing unit 5 changed its name to Gilbert/Commonwealth, Inc. of Michigan. In 1991, the assets of Gilbert/Commonwealth, Inc. of Michigan were sold to a third party, and in 1005, Gilbert/Commonwealth, Inc. of Michigan was dissolved.

The plaintiff's complaint alleges that on April 9, 2001, plaintiff-decedent French attempted to remove a piece of metal that had become caught in the grinder. The piece had tripped the breaker and caused the grinder to stop. A co-worker opened the door to the dog box and viewed the piece of metal, but was unable to reach it, and called plaintiff-decedent French for assistance.

Plaintiff-decedent French allegedly put his head, both arms, and shoulders through the door in an attempt to retrieve the metal piece from the grinder. While he was

doing this, a pump on the dog box tripped, and the dog box filled with slurry. Co-workers were unable to pull plaintiff-decedent French out of the dog box, and he drowned.

Plaintiff commenced the instant wrongful death action on April 3, 2003 by filing a writ of summons. By order of the court, plaintiff's original suit was consolidated on June 10, 2005. Plaintiff's complaint was filed on September 8, 2005.

## II. Standard of Review

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law. Pa.R.C.P. 1035.2. In considering the merits of a motion for summary judgment, the court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Fine v. Checcio*, 582 Pa. 253, 265, 870 A.2d 850, 857 (2005). Where the non-moving party fails to adduce sufficient evidence to establish the existence of an element essential to his case and on which he bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Ertel v. Patriot-News Co.*, 544 Pa. 93, 674 A.2d 1038 (1996).

## III. Discussion

For the sake of completeness and conciseness, the court will address the merits of both defendants' motions for summary judgment individually and separately.

### A. Defendant United Conveyor's Motion

Relative to defendant United Conveyor, the plaintiff alleges that plaintiff's and plaintiff-decedent's injuries are the result of the United Conveyor's negligence and breach of warranty, arguing that the United Conveyor defectively designed and manufactured the dog box and Ashpit Rejection System. Furthermore, plaintiff alleges that United Conveyor failed to warn users of the dog box of potential dangers. Plaintiff also argues that defendant United Conveyor is liable for plaintiff's and plaintiff-decedent's injuries under a theory of strict liability under Section 402(a) of the Restatement (Second) of Torts.

Defendant United Conveyor argues that the plaintiff's claims are barred by Pennsylvania's Statute of Repose since more than twelve (12) years elapsed between the completion of the dog box and ash conveying system and the date of plaintiff-decedent's accident. Furthermore, United Conveyor argues that it cannot be held liable under Section 402(a) of the Restatement (Second) of Torts because the ash handling system experienced significant and substantial changes between the date of its installation and the date of the plaintiff-decedent's accident. United Conveyor also contends that the obstruction of the main access door to the crusher within the dog box was a superseding cause of the plaintiff-decedent's accident and resulting injuries, and it therefore cannot be held liable for any negligence.

1. Pennsylvania's Statute of Repose

Pennsylvania's Statute of Repose is codified at 42 Pa.C.S.A. §5536. In relevant part, the statute provides:

(a) General rule. — Except as provided in subsection (b), a civil action or proceeding brought against any

person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.

(2) Injury to property, real or personal, arising out of any such deficiency.

(3) Injury to the person or for wrongful death arising out of any such deficiency.

(4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).

42 Pa.C.S.A. §5536. A party moving for protection under the statute of repose must show: 1) that what was supplied was an improvement to real estate; 2) that more than 12 years elapsed between the completion of the improvements to real estate and the injury; and 3) that the activity of the moving party was within the class which is protected by the statute. *McConnaughey v. Building Components, Inc.*, 536 Pa. 95, 99, 637 A.2d 1331, 1333 (1994).

United Conveyor was retained by Gilbert in 1961 to design the ARS, including the dog box, for unit 5. Unit 5 became operational in 1964. Neither plaintiff nor United Conveyor dispute this. Thus, there is no question that more than 12 years have passed between the completion

of the ARS and dog box and the date of plaintiff's and plaintiff-decedent's injuries.

The court directs its attention to the meaning of the term "improvement" within the confines of the statute of repose. In *McCormick v. Columbus Conveyor Co.*, 522 Pa. 520, 564 A.2d 907 (1989), the Pennsylvania Supreme Court adopted the Black's Law Dictionary definition of "improvement" as:

> A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.

522 Pa. at 524, 564 A.2d at 909. Whether a particular piece of equipment is an improvement to real estate is a question of law. *Lejeune v. Bliss-Salem, Inc.*, 1995 W.L. 491253 at 5 (E.D. Pa.1995); *Bioni v. Canon-McMillan School District*, 521 Pa. 299, 555 A.2d 901 (1989).

What constitutes an improvement to real estate is a determination which must be made on a case-by-case basis. *Christ v. Prater Industries, Inc.*, 67 F. Supp. 2d 491 (E.D. Pa. 1999). An improvement may be anything that permanently enhances the value of real property and commonly includes erection of a building, replacing old buildings with new ones, substantial repairs to a building which are necessary to preserve it, substantial additions to or changes in existing buildings, construction of sidewalks, erection of fences and preparation of land for building sites. *Christ v. Prater Industries, Inc.*, *supra* at 494; *Noll v. Harrisburg Area YMCA*, 537 Pa. 274, 286, 643 A.2d 81, 87 (1994).

It is axiomatic that a fixture qualifies as an improvement. *Christ v. Prater Industries, Inc., supra,* citing *Nish v. FMC Corporation,* 1993 W.L. 74839 (E.D. Pa. 1993); *Catanzaro v. Wasco Products, Inc.,* 339 Pa. Super. 481, 485, 489 A.2d 262 1985. The Federal Court in *Christ* provided the following test:

> The general test used in determining when an article of personalty is a fixture has three components:
>
> (1) the relative permanence of attachment to realty;
>
> (2) the extent to which the chattel is necessary or essential to the use of the realty; and (3) the intention of the parties to make a permanent addition to the realty. *Noll,* 537 Pa. at 286-287, 643 A.2d at 87. Other considerations in making a determination whether an object is a fixture and hence may be considered to be an improvement include: the ease of removing the object; whether the object may be removed without damaging the real property; how long the object has been attached to the real property; whether the object is necessary or essential to the real property; and the conduct of the party and whether it evinces an intent to permanently attach the object to the realty. *Vargo,* 715 A.2d at 426, citing *Noll,* 537 Pa. at 288, 643 A.2d at 88.

*Christ v. Prater Industries, Inc.,* 67 F. Supp. 2d at 494.

In *Christ,* the federal court found that a grass seed mixer did not constitute an improvement to realty and was in the nature of personalty. The seed mixer model which caused the plaintiff's injuries in *Christ* was thirteen to fifteen tall, weighed approximately ¾ of a ton and sat on braces, which are bolted into the plant foundation with six

very large one-half inch bolts. There is a pit beneath the mixture that goes below level for cleaning the mixer out at the bottom. The court noted that despite its weight (400 to 500 pounds of which is made up by the drive motor) the mixer was fully assembled at the Prater Industries plant in Illinois. In 1975 it was shipped to the plant in Denver, PA, where the plaintiff was employed, although the drive motor and pulley assemblies were removed for shipping and subsequently reinstalled. The court further noted that the mixer can be moved without damage to the building and was not a part of the building structure, although retro-fitting would require about one and one-half days of downtime for the mixer and approximately 25 to 40 man hours. The court further noted that while it appeared that the mixer had never been moved, there was no evidence before the court as to an objective intention to incorporate the mixer into the physical plant as to render it an actual part of the facility. Further the court found that there was no evidence that the mixer was an integral and necessary part of the real estate such that its presence significantly enhanced the value of the realty or that its absence would significantly damage the property's value.

Here, the bottom ash system is described as including a water and ash tank which is 40 foot long by 14 foot high by 11 foot wide, which is bolted to the floor of the plant. Welded to the tank is the dog box, and bolted to the dog box is a grinder, transition piece, pump and 1500 feet of pipe. The system weighs several thousand pounds. The water and ash tank, and the dog box, which is welded to it, accepts ash from the bottom of the boiler and acts as a receptacle and conduit for this ash to exit the plant to a storage pond outside of the plant. Removal of the system

would require a shutdown of the unit that it serves that produces power. The bottom ash conveying system would have to be completed dissembled.

The court here finds that the question of whether the ash pit rejection system constitutes a fixture and thus an improvement to the real estate is a question of fact for the jury.

As noted in *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 247-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), the court's responsibility is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried.

Here, there exists factors which must be considered in determining whether or not the equipment in question constitutes a fixture which cannot be resolved by the court based upon the record as it presently exists. The record is not clear as to the degree of attachment of this system to the real property nor the extent to which the object may be removed without damaging the real property. Also, there is disputed evidence as to whether it was the intent of the parties to permanently attach the object to realty as plaintiff references the asset sale agreement which lists the equipment as an asset sold separately from the realty. Further, the court cannot determine from this record the exact work that would be necessary to dismantle the equipment and remove it from the realty. Relevant evidence can also conclude testimony regarding the effect on the value of the real estate if the equipment were removed. Defendants have argued that the system is necessary to the operation of the boiler; however, the question is not its necessity to the operation of a specific function but

rather a necessity to the building itself. Based upon the evidence that is available or lack of it, that issue is subject to further development through evidence and argument. Defendants also argue that if the system were removed, the components would have to be cut into pieces small enough to remove them from the building, however, the court cannot determine as a matter of law at this juncture whether it is possible to remove the system in sections in such a manner that its utility could be spared.

The defendants rely heavily upon *McCormick v. Columbus Conveyor Co.*, 522 Pa. 520, 564 A.2d 907 (1989), which held that an action brought by a worker injured by a belt conveyor incorporated into a power plant was subject to summary judgment under the statue of repose as to the manufacturer of the belt conveyor. The court held that the manufacturer was engaged in the design of an improvement to real property and was thus entitled to the benefit of the statute of repose. However, a reading of *McCormick* shows that the Supreme Court did not conduct an analysis of the issue of whether the belt conveyor constituted an improvement to real property as that issue had been previously determined thereby establishing the conveyor as an improvement by the law of the case, the Supreme Court stating that it is hornbook law that issues decided by an appellate court on a prior appeal between the same parties become the law of the case. Thus, the specific evidence that was relied upon in *McCormick* to determine that the conveyor constituted an improvement to real estate was never discussed in the *McCormick* opinion and is not available for comparison in this case. The bulk of the opinion in *McCormick* goes to the issue of whether the manufacturer fell within the class

of persons the statute was enacted to protect.

In *Ervin v. Continental conveyor & Equipment Co., Inc.*, 674 F. Supp. 2d 709 (D.S.C., 2009), the court held that a cotton baling operation was not a permanent improvement to real property even though the incline conveyor was bolted down and hard wired to the facility's electrical system. In *Ervin*, the manufacturer cited *McCormick v. Columbus Conveyor*, *supra*, as an example of a conveyor system that was found to be a fixture. However, the court also noted a number of other cases in which conveyor systems and similar industrial devices were determined not to be improvements to real property for the purpose of various statutes of repose. The Federal Court pointed to *Tropello v. Matthews Conveyor Co.*, 1994 W.L. 161380 (E.D. Pa. 1994), where the District Court for the Eastern District of Pennsylvania determined that a conveyor system in a Nabisco bakery did not constitute an improvement to real property. The system in Nabisco consisted of eleven sections all bolted together and attached directly to the bakery's ovens, suspended from a steel frame consisting of vertical rods and attached to beans running parallel to the ceiling of the plant. In Nabisco, the conveyor at issue had been dismantled and sold for scrap. *Tropello* distinguished *McCormick* by noting that the conveyor was not incorporated into the construction of the building as was the coal conveyor in *McCormick*. Using that analysis, the court cannot here determine that the ash pit rejection system is incorporated into the construction of the building. In fact, the evidence of record would suggest that it is not.

*Ervin* further cited *Cosse v. Allen-Bradley Co.*, 601 So.2d 1349, 1354 (1992), which held that the designer

and installer of a conveyor system was not entitled to protection under the statute of repose where the conveyor system at issue was approximately 80 feet in length, and was suspended from the floor of the building and attached with bolts. The court further noted that in order to remove the conveyor, it would be necessary to dissemble it and take it out in pieces. The Louisiana Supreme Court concluded that the defendants had not sufficiently proved that the conveyor was an improvement and thus declined to apply the State of Repose to the conveyor system.

The court here concludes that the record presently before the court is inconclusive as to all the factors that must be considered in determining whether the ash pit rejection system constitutes an improvement to realty, and such determination can only be made after development of a full record at trial.

Given our finding that an issue of fact exists as to whether the ash pit rejection system constitutes an improvement within the meaning of §5536, the court need not address the question of whether or not the defendants fall within the class protected by the statute. The court further notes that defendant Gilbert Commonwealth has entered into an a joint tort feasor release with the plaintiffs; however, the court finds that the existence of such release has no effect on the merits on the motion for summary judgment.

2. Liability under Section 402A of the Restatement (Second) of Torts

A plaintiff proceeding under Section 402A of the Restatement (Second) of Torts must prove: 1) that the product was defective; 2) that the defect existed when it left the hands of the defendant; and 3) that the defect

caused the harm. *Riley v. Warren Manufacturing, Inc.*, 688 A.2d 221, 224 (Pa. Super. 1997).

United Conveyor contends that at some point after the installation of the ashpit rejection system, the system was substantially changed with the addition of a pipe that had been placed in front of the main access door. United Conveyor asserts that this pipe prevented workers from accessing the dog box and crusher through the larger, main access door as intended and contemplated by the original design of the system. In support of this contention, United Conveyor cites testimony of Richard Sutton a co-worker of plaintiff-decedent. Mr. Sutton testified:

Q: If the side door was accessible and the side door was open and water came into the dog box, the water would exit through the side door; correct?

A: Yes.

Q: And that would prevent a drowning occurring?

A: Absolutely.

Q: Like the one in this case?

A: Correct, correct.

(Defendant United Conveyor's exhibit D — Richard Sutton). United Conveyor also provided testimony from Keith Bastian, a plant manager at WPPP in 2001. Mr. Bastian testified:

Q: Okay. Knowing the dimensions of that die door, if Mr. French had gone in the side door and the dog box would have filled with water, would there have been room for the water to exit the dogbox?

A: Because of the location of the door, the dog box would not have even begun to fill up with water. It would have just run out the door.

Q: So if Mr. French had used the side door, this accident would not have happened; is that correct?

A: Correct.

(United Conveyor exhibit I — Keith Bastian).

United Conveyor argues that because of the obstruction of the main access door by the pipe, plaintiff-decedent died while accessing the crusher through a smaller access point that was not intended to be used in that manner.

Plaintiffs assert that the pipe was a design defect of the ashpit rejection system which was in place when it was installed. Plaintiffs argue that since United Conveyor did not provide erection engineers for the ashpit rejection system's construction and thus are responsible for the alleged defect.

It is clear that issues of fact remain as to the installation of the pipe that allegedly blocked the main access door, and whether this was a defect that existed when United Conveyor designed the ashpit rejection system. Since issue of facts remain as to this theory of liability, summary judgment would be improper.

3. Negligence

To prevail on a negligence claim, plaintiffs must establish a legal duty, a breach of that duty, and a casual connection between the breach and resulting injury. *Hightower-Warren v. Silk*, 548 Pa. 459, 698 A.2d 52, 54 (1997). A superseding cause is an act of a third person or

other force which, by its intervention, prevents the actor from being liable to another. Restatement (Second) of Torts, §440. Superseding events may relieve a defendant of liability by breaking the chain of causation. *Powell v. Drumheller*, 539 Pa. 484, 493, 653 A.2d 619, 623 (1995).

United Conveyor alleges that the pipe which blocked the dog box's main access door is a superseding cause of plaintiffs' injuries. As discussed above, however, issues of fact remain as to the installation of the pipe, and whether it in fact caused plaintiff-decedent's death. Thus, summary judgment would be improper on these issues at this time.

4. Pre-Emption and Sophisticated User

United Conveyor has also raised federal pre-emption as to Permit-Required Confined Spaces; however, this court has already ruled in response to a prior motion in limine to preclude expert testimony that the rule of pre-emption is not applicable in this case. *See* order dated December 5, 2012. Additionally, United Conveyor has raised the issue of "Sophisticated User" as a defense pursuant to §388 of the Restatement 2d of Torts; however, that defense cannot be determined at this time because it would require a finding that United Conveyor provided the information as to the alleged defect to a third party responsible for assuming a duty to warn. Here, United Conveyor denies the existence of a defect and provides no evidence of having passed on specific information that would pass that duty on to any third person and thereby resolve itself of any responsibility.

B. Defendant Gilbert's Motion

Relative to defendant Gilbert, the plaintiff alleges that

the Gilbert is liable for the injuries sustained by plaintiff and plaintiff-decedent under the theories of negligent design and breach of warranty. Furthermore, plaintiff alleges that defendant Gilbert is liable under a theory of strict liability under Section 402(a) of the Restatement (Second) of Torts.

Defendant Gilbert argues that the plaintiff's claims are barred by Pennsylvania's Statute of Repose since more than twelve (12) years elapsed between the completion of the dog box and ash conveying system and the date of plaintiff-decedent's accident. Gilbert also contends that it cannot be held liable under Section 402(A) of the Restatement (Second) of Torts because the ARS experienced significant and substantial changes between the date of its installation and the date of the plaintiff-decedent's accident.

1. Pennsylvania's Statute of Repose

The court references its foregoing discussion of 42 Pa.C.S.A. §5536, relative to United Conveyor's motion for summary judgment and incorporates it herein as it applies to defendant Gilbert.

2. Section 402A of the Restatement (Second) of Torts

Gilbert argues that Section 402A does not extend to parties who provide only services. Gilbert contends that it did not in fact supply any product, and that its technical drawings and professional advice do not constitute products that would give rise to Section 402A liability.

Section 402A does not provide a definition of the word "product." In *Cox v. Shaffer*, 223 Pa. Super. 429, 302 A.2d 456 (1973), the Superior Court declined to extend

the definition of product to include a silo built on an employer's land. *Id.* Consequently, Pennsylvania has not expanded liability under 402A to include individuals who provide a service. *See Snyder v. ISC Alloys, Ltd.*, 772 F. Supp. 244, 251 (1991) (holding that technical drawings do not constitute a product); *Abdul-Warith v. Arthur McKee & Co.*, 488 F. Supp. 306, 310 (E.D. Pa. 1980) (holding that an architect or designer who simply provides services in the manner of the design or merely supervises cannot be held strictly liable).

In the case sub judice, it is apparent that the former Commonwealth Associates provided design specifications and solicited bids for those specifications to be engineered. The specifications for unit 5 were subsequently designed by United Conveyor. At no time did Commonwealth Associates supply anything more than design specifications or schematics, and technical drawings. Thus, Commonwealth Associates did not supply a product within the meaning of Section 402A, and Gilbert cannot be liable under that theory. Therefore, Gilbert is entitled to judgment as a matter of law regarding liability under Section 402A.

Plaintiff has also alleged negligence theories against defendant Gilbert Commonwealth, but has not come forward with any identification of any evidence of any negligence attributable to these defendants, by way of expert testimony or otherwise.

## ORDER OF COURT

And now, this 2nd day of October, 2013, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered, adjudged, and decreed:

392

1. Defendant United Conveyor's motion for summary judgment is hereby denied.

2. Defendant Gilbert Commonwealth, Inc.'s motion for summary judgment is hereby granted. The plaintiff's complaint against this defendant as well as any other claims or cross-claims of any other party against it are dismissed.