557 A.2d 759

**Romaine HILL, Appellant,**

v.

**Howard Ernest REYNOLDS.**

Superior Court of Pennsylvania.

Argued Oct. 14, 1988.

Filed April 11, 1989.

Mark J. Gesk, Pittsburgh, for appellant.

Edward Yurcon, Pittsburgh, for appellee.

Before BROSKY, JOHNSON and MELINSON, JJ.

MELINSON, Judge:

The appellant, Romaine Hill, was severely injured in an accident while a passenger in an automobile driven by the appellee, Howard Ernest Reynolds. The accident occurred when Reynolds's automobile left the roadway and struck a guardrail. Following a three-day jury trial, the jury found that Hill's injuries were caused by the joint negligence of Hill and Reynolds. Reynolds was found to be seventy percent (70%) negligent and Hill thirty percent (30%) negligent. Damages were assessed at One Hundred Three Thousand Dollars ($103,000.00). Hill's post-trial motions were denied, and this appeal followed.

Essentially, Hill is before this court because she feels her award of damages was inadequate and because she feels that the jury could not have properly found her to have been contributorily negligent. The jury's finding of contributory negligence, if upheld, will of course serve to reduce her award further. Hill states the following five questions on appeal in an effort to secure a new trial, or, alternatively, a new trial on the issue of damages: 1) Under the evidence presented in the case, did the trial court err in charging the jury that Hill could be found contributorily negligent? 2) Did the trial court err as a matter of law by instructing the jury that Hill could be found contributorily negligent in the manner it so stated? 3) Did the trial court abuse its discretion in denying Hill's Motion *in Limine,* permitting Reynolds's counsel to question Hill concerning the events occurring prior to the accident? 4) Should a new trial be granted on the issue of damages because defense counsel asked Hill on cross-examination whether she was sexually or physically abused as a child? 5) Did the trial court abuse its discretion by permitting a defense vocational expert to testify that Hill is still capable of performing light duty work in contradiction to medical testimony at trial that

she is not able to perform such work?[1] Upon review of these questions and the issues that they raise, we affirm the judgment below.

Hill's first two questions on appeal challenge the propriety of the trial court's charge to the jury regarding the issue of Hill's possible contributory negligence.

'Where the accuracy of a charge is in issue, an appellate court must look to the charge in its entirety against the background of evidence in order to determine whether or not error was committed and whether that error was prejudicial to the complaining party.'

*Berry v. Friday,* 324 Pa.Super. 499, 503, 472 A.2d 191, 193 (1984), (quoting *Slavish v. Ratajczak,* 277 Pa.Super. 272, 274, 419 A.2d 767, 768 (1980)). We shall look first to the evidence and then to the jury charge itself.

All facts concerning the accident produced at trial arose from two sources: the testimony of Hill on cross-examination and Reynolds's prior admissions read to the jury. Reynolds did not testify at trial nor did two other persons who were passengers in the automobile at the time of the accident.

Reynolds admitted that he was the driver and Hill a passenger of the automobile at the time of the accident. The accident occurred on January 31, 1982 at approximately 6:25 a.m., according to Reynolds's admissions, when the automobile left the roadway and struck a guardrail. Reynolds admitted further that he was inattentive to the road while operating the vehicle and that he failed to have proper control of the vehicle when the accident occurred.

Hill testified on cross-examination that she and a friend met Reynolds and his companion at approximately 10:30 p.m. at an establishment in Monessen, Pennsylvania. Hill and her friend were out for an evening of dancing. Approximately one-half hour later, one among the group suggested

1. Although it is evident from Hill's brief that Hill is dissatisfied with her award of damages, Hill has not raised any issue directly challenging the adequacy of the damages. Accordingly, this issue is not before us. *See* Pa.R.A.P. 2116(a), 2117(b), 2118, 2119(a).

that they all go to Pittsburgh. This they eventually did, Reynolds doing the driving; and they arrived at a Pittsburgh club and stayed there until closing, approximately 2:00 a.m. The quartet then departed to look for another establishment. They stopped at another Pittsburgh location where Hill and Reynolds were able to talk for several hours. Prior to returning to Monessen, the party stopped at a restaurant where Reynolds had something to eat. Approximately ten minutes after the group motored away from the restaurant, Hill, who was the front seat passenger, fell asleep. The next thing Hill remembered was waking to find her feet pinned between the dashboard and the door of the automobile.[2]

In his charge to the jury, the trial judge gave the following instructions concerning the issue of Hill's possible contributory negligence:

Contributory negligence. While admitting negligence and causation on behalf of the defendant, defendant [Reynolds] claims that plaintiff [Hill] was contributorily negligent. The defendant has the burden of proving the existence of such negligence.

You must, therefore, determine whether the plaintiff was negligent in that as an ordinarily prudent person under all the circumstances then present she failed to exercise reasonable care for her own protection.

If you find that the plaintiff was negligent, you must determine whether the plaintiff's conduct was a substantial factor in bringing about her injuries.

As I have previously said, contributory negligence is a defense for which the defendant has the burden of proof.

**2.** This last item of testimony is from Hill's direct examination. Here, we also note that Hill contends that it was improper for defense counsel to have elicited the testimony Hill gave on cross-examination concerning the events occurring prior to the accident. This testimony we have relied upon in presenting the facts. Hill's Motion *in Limine*, previously referred to, was designed to shield this testimony. The trial court denied this motion, and we affirm the trial court's ruling for reasons hereinafter stated. Accordingly, we have used the cross-examination testimony of Hill to set forth facts we deem relevant to the disposition of this appeal.

The burden is not on the plaintiff to prove her freedom from contributory negligence.

A defendant who defends on the ground of contributory negligence must prove that defense by a fair preponderance of the evidence. If the defendant has not sustained that burden of proof, then the defense of contributory negligence has not been made out.

In the present case, the mere fact that the plaintiff was a passenger and fell asleep is not evidence of negligence and should not be so considered by you. However, you have heard certain testimony regarding the activities of the plaintiff and the defendant and the hours during which the activities were conducted. Under the circumstances, you must determine whether plaintiff as a reasonably prudent person should have fallen asleep and entrusted her safety solely to the driver of the car. In other words, was the plaintiff contributorily negligent?

In order for the defendant to successfully defend on the grounds that plaintiff was contributorily negligent, her negligent conduct must have been a substantial factor in bringing about the accident. This is what the law recognizes as a legal cause. A substantial factor is an actual, real factor, although the result may be unusual or unexpected, but it is not an imaginary or fanciful factor or a factor having no connection or only insignificant connection with the accident.

(N.T. 473–475).

The basis for the trial court's charge is found in *Frank v. Markley*, 315 Pa. 257, 173 A. 186 (1934). In *Frank*, the Pennsylvania Supreme Court considered the issue of an automobile passenger's contributory negligence under similar factual circumstances. Portions of the Court's opinion are instructive:

We have frequently discussed the elements of contributory negligence on the part of guests in automobiles. Such negligence exists when two circumstances concur: First, an opportunity to know of threatened danger; second, an opportunity to give warning.... Here the guest

by his own act was prevented from apprehending threatened danger, and, a fortiori, from giving warning of it. He was asleep. Was this contributory negligence? May a guest in an automobile place himself in a condition which makes it impossible for him to learn of threatened danger? In other words, must he remain awake so that he may observe obvious danger? Ordinarily, there is no duty that requires a guest to remain awake when riding in an automobile. That a guest may occasionally go to sleep in an automobile is a matter of common experience.... It must be now regarded as settled that the mere fact of sleeping does not, as a matter of law, convict a guest in an automobile of negligence....

... However, it cannot be said that under all circumstances a guest may entrust his safety to the driver and thereby relieve himself of responsibility. If some additional inculpatory evidence of sufficient importance appears, such evidence, together with the fact of sleeping, should be submitted to the jury for a finding as to contributory negligence, or such additional evidence may be of so much importance and so grave as to constitute contributory negligence as a matter of law. To illustrate: In the present case the mere fact of the guest sleeping would not be evidence of negligence and should not be so considered; but, there is the additional fact that this guest went to sleep when he knew that he and the driver had worked the day before, drove from New Castle to Youngstown in the evening, there met some young ladies, spent the evening at their home and at a dance hall, dancing until late at night, then went to an eating house, and from there left at 3 o'clock in the morning to drive home. Under such circumstances it became a question for the jury as to whether he, as a reasonably prudent man, should have permitted himself to fall asleep, entrusting his safety solely to the driver of the car.

*Id.*, 315 Pa. at 259–260, 173 A. at 187. The jury in *Frank* found the plaintiff to have been contributorily negligent by falling asleep while a passenger under the facts set forth above. The Court saw no reason to disturb the jury's

verdict, noting as obvious the inferences found by the jury under the facts: that both driver and passenger were too tired to have set out on their journey and should not have done so. *Id.*, 315 Pa. at 261, 173 A. at 187.

Hill argues, however, that her case is distinguishable from *Frank* in that there was no additional inculpatory evidence of sufficient importance produced at trial which would allow a jury to consider her sleeping while a passenger to be negligent. Specifically, Hill argues that there was no evidence that Reynolds was fatigued or intoxicated. By contrast, in *Frank* there was evidence of the driver's fatigue by the fact that the driver fell asleep at the wheel causing the accident. Hill bolsters her argument by citing her testimony that Reynolds did not appear tired to her prior to her falling asleep. Therefore, Hill contends, a jury could only arrive at a determination of Reynolds's fatigue through speculation.

■ We disagree that there was no additional inculpatory evidence. While this additional evidence may not be as forceful as the evidence in *Frank* in that there was no direct evidence of Reynolds's fatigue, the facts of the events prior to the accident, of the extended social outing that lasted from at least 10:30 p.m. until 6:25 a.m. the following morning when the accident occurred, do allow for inferences that Reynolds, Hill, and their companions were too fatigued to set out on their journey back to Monessen when they did and that Hill should have realized this before allowing herself to fall asleep as a passenger.

> '... where there is *any* evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof. A court may set aside a verdict as against the weight of the evidence, but that is the most they [sic] can do to assist the party.'

*Heffernan v. Rosser*, 419 Pa. 550, 554–555, 215 A.2d 655, 657 (1966) (quoting *Howard Express Co. v. Wile*, 64 Pa. 201, 205–206 (1870)) (emphasis added in *Heffernan v. Rosser*). *See also O'Donnell v. Westinghouse Electric Corporation*,

515 Pa. 307, 528 A.2d 576 (1987); *Yandrich v. Radic*, 291 Pa.Super 75, 435 A.2d 226 (1981), and *Smith v. Port Authority Transit*, 257 Pa.Super. 66, 390 A.2d 249 (1978).

Thus, while evidence supporting Reynolds's defense that Hill was negligent in her own right may not be substantial on its face, facts were indeed placed into evidence from which Hill's contributory negligence could properly be inferred. The weighing of these facts and the proper drawing of inferences therefrom was in the proper domain of the jury. *See O'Donnell*, 515 Pa. 307, 528 A.2d 576 and *Berry*, 324 Pa.Super. 499, 472 A.2d 191. In this result, we are supported by a line of cases stemming from *Frank* which properly direct that where a passenger falls asleep in an automobile that is later involved in an accident, the fact finder in the resulting lawsuit by the passenger has the responsibility to determine under the surrounding facts whether the passenger was contributorily negligent for having fallen asleep. *See Anstine v. Pennsylvania R. Co.*, 342 Pa. 423, 20 A.2d 774 (1941); *Bohner v. Eastern Express, Inc.*, 405 Pa. 463, 175 A.2d 864 (1961); *Campana v. Bower*, 424 Pa. 383, 227 A.2d 887 (1967), and *Stafford v. Roadway Transit Co.*, 70 F.Supp. 555 (W.D.Pa.1947).

Accordingly, the trial court properly instructed the jury in addressing the issue of Hill's possible contributory negligence.

Hill next challenges *Frank* itself as asserting "an absurd and unworkable rule of law." Hill argues that it is incorrect or illogical to assign negligence to a passenger upon the moment of his falling asleep when there are attendant circumstances that would make the passenger's falling asleep negligent, but rather the negligence should be assigned to the passenger the moment he enters the automobile knowing that there is a potential for danger. That is, if a passenger knows that the driver is fatigued or intoxicated, it would be negligent for the passenger to voluntarily agree to be in the vehicle in the first place, not at the later point where he falls asleep. With respect to Hill's appeal, she argues that if the law of contributory negligence for

automobile passengers would be thus construed, then it was error for the trial court to have instructed the jury on the issue of Hill's contributory negligence in the manner in which it did.

We note immediately a flaw in Hill's logic. Hill would have us construe Pennsylvania law to assign negligence to her immediately upon becoming a passenger if the aforesaid attendant circumstances were present, rather than at the later point when she fell asleep. Of course, Hill maintains that there was no evidence of these attendant circumstances brought forth at trial. We have discussed this issue. There was evidence produced from which a jury could infer that Hill was contributorily negligent, and the jury found her to be so. Therefore, the jury found the attendant circumstances to be present at the time Hill entered the automobile for the return trip to Monessen. Had the trial court charged as Hill would have wished, she would still have been found by the jury to have been contributorily negligent.

Further, Hill has given *Frank* a too formalistic and restrictive reading. *Frank* does not mandate a rigid "sleeping test" to all questions concerning a passenger's possible contributory negligence, as Hill suggests. Rather, the standard is more broadly stated. We have quoted it previously and do so once again: "Such negligence exists when two circumstances concur: First, an opportunity to know of threatened danger; second, an opportunity to give warning." *Frank*, 315 Pa. at 259, 173 A. at 187.

We construe Hill's argument to advocate a standard actually more strict than the one applied to her at trial: she would ask to be found negligent if she had an opportunity to know of potential danger only. This approach does not allow for any flexibility among different factual settings or the different levels of fatigue or other incapacities from which the driver might suffer. It may often be the case that a danger will not arise until sometime into the journey when fatigue from an entire evening's activities (or whatever may be the cause) will overcome the driver. Unless

asleep, the passenger will have an opportunity to warn at this point. While knowledge of the circumstances involving the driver's fatigue or other incapacity may require the passenger to remain vigilant during the journey, the circumstances might not be of such force as to cause reasonable persons to conclude that the passenger was negligent by becoming a passenger from the start. We are therefore not persuaded that the settled law in Pennsylvania on this issue should be changed. Accordingly, we reject Hill's challenge to *Frank* and its progeny.

■ Hill next contends that the trial court erred by denying her Motion *in Limine*. By the Motion *in Limine*, Hill attempted to prevent testimony concerning the events prior to the accident from coming into evidence. Hill reasoned that unless the evidence would show that Reynolds was either intoxicated or fatigued when Hill volunteered to be a passenger with him, the evidence was irrelevant. Further, Hill argues that she feared that such evidence would cause the jury to view her with an unfair prejudice. Specifically, Hill contends that if the jury were to learn that she, a white widow with a child, was in the company of a married black man, Reynolds, on the evening in question by mention of the various establishments and neighborhoods where the two had visited that evening, the jury would harbor an unfair bias against her.

We need only reference our disposition to Hill's first two questions on appeal to address the issue of the relevance of the events occurring prior to the accident. The evidence of the all-night outing is pertinent to the issue of Hill's contributory negligence.

Hill maintains, however, that once she testified that Reynolds did not appear to her to be fatigued, the inquiry into the events prior to the accident must cease in absence of direct testimony to the contrary. This reasoning ignores the well-established tenet of the fact-finding process that a jury or judge need not believe the testimony of a witness, even if uncontradicted. *See Karcesky v. Laria*, 382 Pa. 227, 114 A.2d 150 (1955); *Morgan v. Philadelphia Electric*

*Co.,* 299 Pa.Super. 545, 445 A.2d 1263 (1982); *Rogers v. Hammett,* 229 Pa.Super. 6, 323 A.2d 394 (1974). The trier of fact, while passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence. *See, e.g., Commonwealth v. Griscavage,* 512 Pa. 534, 517 A.2d 1256 (1986); *Commonwealth v. Harper,* 485 Pa. 572, 403 A.2d 536 (1979). Hill's argument that the testimony on the pre-accident events was rendered irrelevant or impermissible by her testimony that Reynolds did not appear to her to be fatigued is therefore without substance.

■ Hill's secondary argument that this evidence was also unfairly prejudicial to her is similarly without foundation. Indeed, it is ludicrous for Hill to argue that evidence which might indicate that Reynolds is black would be prejudicial. Reynolds was the defendant. Hill hauled him into court, and he had the right of every litigant to appear in open court and defend claims made against him or press his own. Had he done so, the jury would have discerned his race immediately. Hill, therefore, may not build an argument based on the fortuity that Reynolds did not appear in court. In any event, we note that the record shows no testimony stating that Reynolds was either black or married.

Hill also argues on this issue that it was prejudicial for defense counsel to state in his opening statement that the defense would not infer from the anticipated testimony concerning the events prior to the accident that Hill and Reynolds had sexual relations. Hill further argues that it was prejudicial for defense counsel to have elicited testimony from Hill that she and Reynolds and their companions ventured to Wiley Avenue, which apparently is in a predominantly black section of Pittsburgh. Hill did not object to either act of defense counsel at trial. Therefore, these issues have been waived. Pa.R.A.P. 302(a).[3]

■ Hill's next issue involves the prejudicial effect, if any, of defense counsel's asking Hill on cross-examination

---

**3.** Rule 302(a) of the Pennsylvania Rules of Appellate Procedure states that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."

whether Hill mentioned to her examining psychologist the alleged fact that she had been physically or sexually abused as a child. The question was raised to elicit testimony which defense counsel believed would cast doubt on the extent of the psychological damages Hill claimed resulted from the accident. The trial court sustained Hill's objection to the question and instructed the jury members to disregard it.

We first note that no testimony was placed into evidence in regard to this matter. Defense counsel asked a question to which Hill did not respond; her counsel objected before she could utter a response. By contrast, evidence was later admitted through the testimony of the psychologist in question, Dr. Bernstein, who stated that in his clinical opinion there was a direct relationship between the accident and the subsequent emotional problems that Hill experienced. N.T. 255.

We are therefore not faced with an issue concerning evidence improperly admitted, as Hill suggests, but whether defense counsel's remarks were improper and, if so, should a new trial be granted because of them.

The grant of a new trial because of counsel's improper remarks is within the discretion of the trial court. *Stevenson v. Pennsylvania Sports and Enterprise, Inc.*, 372 Pa. 157, 93 A.2d 236 (1953); *Harvey v. Hassinger*, 315 Pa.Super. 97, 461 A.2d 814 (1983). If the trial court determines that instructions to the jury to disregard the remarks are sufficient, an appellate court should be "reluctant to reverse since the trial judge is in a better position to see and understand the atmosphere of the trial and the effect the statement had on the jury." *Narcisco v. Mauch Chunk Twp.*, 369 Pa. 549, 552, 87 A.2d 233, 234 (1952). Whether the trial court abused its discretion in denying a new trial will be determined by "an examination of the remark made, the circumstances under which it was made and the precautions taken by court and counsel to remove its prejudicial effects." *Id.*, 369 Pa. at 552, 87 A.2d at 234–235. *See also Clark v. Hoerner*, 362 Pa.Super. 588, 525 A.2d 377 (1987).

Our first observation is that defense counsel's question was not asked in speculation. *See* N.T. 135–138, 275–282. While the question in its own may have been prejudicial to Hill's case for psychological damages, we are hesitant to call it improper because of the existence of a foundation. The question was not irrelevant, even though the weight of the evidence to have been elicited may not have been substantial. We next observe that the trial court quickly and amply instructed the jury to disregard the question. Finally, we note that this single question occurred during the first day of a three-day trial when extensive testimony from Hill's treating psychologist was to follow regarding Hill's psychological condition and the affect the accident had in causing Hill to have emotional difficulties. Under these circumstances, and in view of the entire record, we cannot find that the trial court abused its discretion by not granting a new trial.

Finally, Hill argues that the trial court erred in permitting Reynolds's vocational expert, Mark Heckman, to testify that Hill was capable of performing light duty work when the testimony of the medical experts of both Hill and Reynolds stated that Hill was capable of performing only sedentary work as a result of the accident. Hill claims that the allegedly impermissible testimony of Heckman influenced the jury to return a lower assessment of damages.

■ The issue is whether Heckman was qualified to render an opinion on the kind of work Hill was capable of performing after the accident. "A witness will be qualified as an expert if he or she has any reasonable pretension to specialized knowledge on the subject under investigation." *Yoho v. Stack,* 373 Pa.Super. 77, 540 A.2d 307 (1988). *See also Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974). The witness, however, need not possess all of the knowledge in his or her special field of activity or study in order to qualify as an expert. *Yoho,* 373 Pa.Super. 77, 540 A.2d 307.

■ Heckman testified that he has been a rehabilitation counselor for fourteen and one-half years and is nationally certified as such. His job, as such counselor, is to assess an

ill or disabled person's residual physical capabilities, vocational skills, and educational background and from that data determine potential employment functions. Heckman testified that he had worked with thousands of disabled individuals over the years. Hill did not cross-examine Heckman on his background or qualifications. *See* N.T. 332–339.

In light of Heckman's qualifications we cannot find that the trial court erred in allowing Heckman to render an opinion on Hill's potential job functions. Hill argues that only another medical doctor would be qualified to contradict the medical testimony already given. This does not follow. Heckman testified that he possessed a specialized knowledge allowing him to render an opinion in court concerning Hill's vocational possibilities. Hill had an opportunity to cross-examine Heckman on this issue and indeed did so. The weight of Heckman's testimony on direct and cross-examination as against the medical testimony was for the jury to determine. *See, e.g., Connell v. Connell,* 329 Pa.Super. 1, 477 A.2d 872 (1984); *Tamaqua Borough v. Rush Twp. Sewer Authority,* 85 Pa.Cmwlth. 421, 482 A.2d 1167 (1984). Accordingly, we dismiss Hill's final contention.

The judgment of the trial court is affirmed.