J-A24037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DANIEL ZELIKOVICH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WOOD & FLODGE, AND | : | No. 2975 EDA 2023 |
| CHRISTOPHER H. STEWARD | : | |

Appeal from the Judgment Entered November 13, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 200601802

BEFORE:   LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED APRIL 11, 2025**

In this legal malpractice action, Daniel Zelikovich ("Husband")[1] appeals from the judgment entered upon a jury verdict in favor of Christopher H. Steward ("Attorney Steward") and Wood & Flodge (collectively, "the Defendants").  We affirm.

By way of background, we first summarize that in December 2014, Husband and Wife, then married, executed a postnuptial agreement, prepared by attorney Defendants.  In April 2015, Husband commenced a divorce action. On June 28, 2016, the Bucks County Court of Common Pleas, Family Division ("Family Court"), issued an order, finding the postnuptial agreement was

---

[1] Husband and his former spouse, Irina Zelkovich ("Wife") are now divorced. Nevertheless, as this legal malpractice action pertains to their divorce action, and they have the same last name, we refer to them as "Husband" and "Wife" for ease of discussion.

unenforceable. Almost three years later, in May 2019, Husband "received the master's recommendation, where he learned that [W]ife would receive over $1 million more than she would have received" under the postnuptial agreement. Second Amended Civil Action Complaint, 3/2/21, at ¶ 22 (unnecessary capitalization omitted). Husband ultimately settled the division of the marital estate "for amounts consistent with the master's recommendation." *Id*. at ¶ 23. We note that in the instant trial proceedings, the Defendants maintained that the Family Court did not provide a reason for finding the postnuptial agreement unenforceable. *See* N.T. Jury Trial, 6/7/23, at 40.

On June 29, 2020, Husband commenced the underlying legal malpractice action against the Defendants, raising three counts: negligence, breach of fiduciary duty, and breach of contract. Husband alleged: (1) in the divorce proceedings, Wife claimed "she was misled[ and] bullied, and did not enter into the agreement voluntarily;" and (2) Wife also claimed she did not receive consideration for the agreement, and Attorney "Steward failed to make clear within the agreement that" she in fact did. Second Amended Civil Action Complaint, 3/2/21, at ¶¶ 12-13. Husband averred that but for the "Defendants' negligent drafting of the [postnuptial] agreement, and failure to advise [Husband and Wife] to obtain independent counsel, the postnuptial agreement would have been enforceable." *Id*. at ¶ 20.

- 2 -

The Defendants filed a motion for judgment on the pleadings, invoking, *inter alia*, the statutes of limitations. In December 2021, the trial court granted the motion in part and denied it in part. First, the court found the negligence and breach of fiduciary duty claims were barred by the two-year statute of limitations, where the latest date the statute of limitations could have begun to run was June 29, 2016, when Husband's counsel received the Family Court's order invalidating the postnuptial agreement. However, the court found Husband's breach of contract claim was timely under the four-year statute of limitations, and thus permitted that count to proceed.

In May 2023, the Defendants filed a motion *in limine* to exclude Husband's legal expert witness from testifying about damages. The trial court conducted a hearing on June 1, 2023 — five days before trial was to begin — and granted the motion. The following day, Plaintiff took his expert witness' deposition "by video and, heeding the court's ruling, did not ask [her] opinion on [his] compensatory damages." Trial Court Opinion, 1/25/24, at 2. On June 5, 2023, however, the trial court informed the parties, *via* email, that it was reconsidering its ruling and invited the parties to file briefs. At some point, not clear from the record, the trial court reversed its initial order, thus allowing Husband to present expert evidence relating to compensatory damages. A jury trial commenced the following day, June 6, 2023. Husband did not present any additional testimony by his expert witness.

Next, we summarize that in opening argument to the jury, the Defendants' counsel stated that in the Family Court proceedings: (1) Wife testified that Husband "bullied" her and threatened to leave her if she did not sign the postnuptial agreement; (2) Wife's father testified that Husband was a "puppet master," was controlling, and "secluded" Wife from her family, prohibiting them from seeing Wife or their grandchildren; and (3) Wife's daughter — Husband's stepdaughter — testified that she and Husband had arguments, "he threw a baby bottle at her," and told her to leave the house. N.T. Jury Trial, 6/6/23, at 29-30. At a "lunch recess" later that day, Husband argued that defense counsel's statements, as to what Wife's father and daughter testified, were hearsay.[2] ***See id***. at 91. Defense counsel replied that a statement under oath was not hearsay, and in any event, the statements were not "offered for the truth of the matter," but rather "to point out . . . what the [Family Court] heard." ***Id***. at 91-92.

_____

[2] The Defendants aver that Husband has waived this issue for appeal, for failing to "make a timely specific objection at the proper stage," and instead raising it "long after the" opening argument. Defendants' Brief at 23.

We note the Defendants' opening argument spanned pages twenty through thirty-five of the June 6, 2023 trial transcript. On page ninety of the same transcript, Husband raised his objection to the opening argument. The Defendants responded to the merits, but did not challenge the timing of it. The jury trial spanned three days. Against the particular circumstances in this case, we decline to find Husband's objection was so untimely as to constitute waiver.

The trial court observed, "[I]t looks an awful lot like hearsay," and warned the Defendants' counsel, "At the conclusion of this trial, if I am not satisfied that [you have done what you state you will do], I will [consider] a curative instruction on this point." *Id*. at 92. Shortly thereafter, before the jury returned to the courtroom, Husband raised this hearsay issue again and moved for a mistrial. *See id*. at 104-05. The trial court denied it.

Thereafter, during Wife's direct examination, the Defendants asked whether her father and daughter testified in the Family Court proceedings. Wife responded that they had, but before the Defendants' next question, Husband raised a hearsay objection. The trial court sustained it, and the Defendants moved on to other questioning. *See* N.T., 6/7/23, at 39-40. We further note that in its final jury charge, the trial court instructed the jury that: (1) the lawyers were not witnesses and their statements were not evidence in this case; and (2) the jury could consider testimony given by Husband and Wife at the Family Court hearing, but not by any other person at that hearing. *See* N.T. Jury Trial, 6/8/23, at 23-24.

Husband testified in his case in chief. The Defendants called Wife as their witness. Husband cross-examined her, and asked, *inter alia*: (1) whether she was "already looking for other places to live" in December 2014, when they executed the postnuptial agreement; (2) whether Wife had previously testified that Attorney Steward was not truthful with her; and (3) whether Attorney Steward told her that she could not "waive child support in

- 5 -

the" postnuptial agreement. N.T., 6/7/23, at 42, 48, 49. The Defendants objected, arguing these question exceeded the scope of Wife's direct examination. Husband responded, pertinently, that Wife's direct examination testimony was "intended to show duress," and he sought to ask "what her intentions were when she [entered] into the" postnuptial agreement. *Id*. at 43. The trial court disagreed and sustained each of the Defendants' objections.

At the conclusion of trial, the jury found the Defendants breached their contract with Husband. However, it found the breach of contract was **not** a cause of damages to Husband. Thus, pursuant to the verdict slip instructions, the jury did not reach the issue of the amount of damages to award Husband.

Husband filed a post-trial motion, addressing each of the issues summarized above: (1) the dismissal of his negligence and breach of fiduciary duty claims under the statute of limitations; (2) the preclusion of testimony, by his expert witness, regarding damages; (3) the Defendants' opening argument references to alleged hearsay; and (4) the limiting of his cross-examination of Wife. The trial court conducted a hearing and denied the post-trial motion. On November 13, 2023, the court entered judgment in favor of the Defendants. Husband filed a timely notice of appeal, and both he and the trial court have complied with Pa.R.A.P. 1925.

Husband presents four issues for our review:

1. Did the Trial Court err by granting, in part, [the Defendants']
   Motion for Judgment on the Pleadings thereby dismissing Count

I (Negligence) and Count III (Breach of Fiduciary Duty) of [Husband's] Second Amended Complaint?

2. Did the Trial Court err by denying [Husband's] motion for a mistrial after [the Defendants] made references to hearsay testimony from the Family Court proceedings challenging the underlying post-nuptial agreement?

3. Did the Trial Court err by limiting [Husband's] cross-examination of witness [Wife]?

4. Did the Trial Court err by granting [the Defendants'] motion *in limine* limiting [Husband's] legal expert testimony regarding damages?

Husband's Brief at 4 (unnecessary capitalization omitted and issues reordered for ease of discussion).

In his first issue, Husband challenges the dismissal, under the statute of limitations, of his claims of negligence and breach of fiduciary duty. We consider the applicable standard of review:

> When reviewing whether a trial court properly granted a motion for judgment on the pleadings, this Court's standard of review is plenary and we apply the same standard used by the trial court. The trial court must confine its consideration to the pleadings and relevant documents and must accept as true all well-pleaded statements of fact. A motion for judgment on the pleadings will only be granted where, based upon the pleadings and properly attached documents, there exists no material issues of fact and the moving party is entitled to judgment as a matter of law.

*Hoopes v. Hadley*, 315 A.3d 844, 847 (Pa. Super. 2024) (citations omitted).

"We will affirm the grant of [a motion for judgment on the pleadings] only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise." *Wachovia*

*Bank, N.A. v. Ferretti*, 935 A.2d 565, 570 (Pa. Super. 2007) (citations

omitted).

This Court has stated:

> "[A]n action for legal malpractice may be brought in either contract or tort." . . . With regard to a breach of contract claim, "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large."

*Id*. at 570-71 (citations omitted).

An action sounding in negligence "must be commenced within two

years." 42 Pa.C.S.A. § 5524(2); *see also Mariner Chestnut Partners, L.P.*

*v. Lenfest*, 152 A.3d 265, 277 (Pa. Super. 2016) (stating two-year statute of

limitations applies to claim of breach of fiduciary duty).

> [T]he trigger for the accrual of a legal malpractice action, for statute of limitations purposes, is not the realization of actual loss, but the occurrence of a breach of duty. . . .
>
> > . . . Under the occurrence rule, the statutory period commences upon the happening of the alleged breach of duty.
> >
> > An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. . . .
>
> Pennsylvania favors strict application of the statutes of limitation. Accordingly, the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty, and is tolled only when the client, despite the exercise of due diligence, cannot discover the injury or its cause.

***Wachovia Bank, N.A.***, 935 A.2d at 572-73 (citations and emphasis omitted, and paragraph break added). "This Court has held that the determination of when the statute of limitations has run on a claim for legal malpractice is usually a question of law for the trial judge, unless the issue involves a factual determination." ***O'Kelly v. Dawson***, 62 A.3d 414, 419 (Pa. Super. 2013) (citation omitted).

On appeal, Husband asserts the trial court erred in finding the two-year statute of limitations, for his negligence and breach of fiduciary duty claims, began to run on June 29, 2016, when his attorney received the Family Court's order invalidating the postnuptial agreement. Instead, Husband asserts, his injury did not become "a reality" until May 2019, when he received notice of the master's recommendation and "learned for the first time that [Wife] would receive . . . $1 million [more than] what she would have received had the postnuptial agreement been enforced."[3] Husband's Brief at 37-38 (some punctuation omitted). Husband maintains he "had no way of knowing that he was aggrieved by [the Defendants'] negligence and breach of fiduciary duty until [he] knew he would have to pay" more than the postnuptial agreement's terms, and he "had no way of proving any damages until the master's recommendation." ***Id***. at 37, 39 (unnecessary capitalization omitted). Husband reasons that had he commenced the underlying legal malpractice

_____

[3] Husband thus calculates that he commenced the instant suit, on June 29, 2020, within two years of May 2019.

suit within two years of the Family Court's June 2016 order: (1) the Defendants could have correctly argued that he failed to state an actionable claim because he had not yet suffered damages; and thus (2) this "lawsuit would have been dismissed." *Id*. at 40. Finally, Husband contends there were "genuine issues of material fact [that he] did not know if and to what extent he had suffered damages until May 2019." *Id*. at 40.

After review of the record, the parties' briefs, the applicable law, and the well-reasoned opinion of the trial court, we conclude Husband is not entitled to relief. The trial court opinion aptly applies the law set forth above and properly addresses and disposes of his claim. *See* Trial Court Opinion, 1/25/24, at 9-11 (finding: (1) under the "occurrence rule," Husband's "negligence and breach of fiduciary duty causes of action accrued when [the] Defendants rendered their legal services to" Husband and Wife in 2014; (2) but application of the "discovery rule" was appropriate in this legal malpractice action "because the invalidity of a postnuptial agreement would not be immediately apparent to a layperson;" (3) the latest date that the statute of limitations could possibly begin to run was June 29, 2016, when Husband's counsel received the Family Court order invalidating the postnuptial agreement; (4) Husband "cannot plausibly claim that he did not yet possess sufficient critical facts to be charged with notice that a wrong had been committed and that he may be entitled to redress [upon notification that] the agreement drafted by [the] Defendants [was] legally unenforceable;" and (5)

where Husband commenced this suit on June 29, 2020, the two-year statute of limitations barred his negligence and breach of fiduciary duty claims). Accordingly, we affirm on the basis of the trial court's opinion. We agree with the trial court that based upon the pleadings, there were no material issues of fact and the Defendants were entitled to judgment as a matter of law. **See Hoopes**, 315 A.3d at 847. Thus, no relief is due on Husband's first issue.

In his second issue, Husband asserts the trial court erred in denying a mistrial, based upon the Defendants' references to hearsay. We reiterate that in its opening argument, defense counsel stated that in the Family Court proceedings, Wife's father and daughter testified that Husband had controlling behavior. This Court has stated:

> The grant of a new trial because of counsel's improper remarks is within the discretion of the trial court. If the trial court determines that instructions to the jury to disregard the remarks are sufficient, an appellate court should be "reluctant to reverse since the trial judge is in a better position to see and understand the atmosphere of the trial and the effect the statement had on the jury." Whether the trial court abused its discretion in denying a new trial will be determined by "an examination of the remark made, the circumstances under which it was made and the precautions taken by court and counsel to remove its prejudicial effects."

**Hill v. Reynolds**, 557 A.2d 759, 765-66 (Pa. Super. 1989) (citations omitted).

We note that when reviewing an attorney's opening statements at trial:

> It is improper for counsel to present facts to the jury which are not in evidence and which are prejudicial to the opposing party; counsel may not comment on evidence to the effect that it removes an issue of credibility from the jury. Further,

- 11 -

> whether remarks by counsel warrant a new trial
> requires a determination based upon an assessment
> of the circumstances under which the statements
> were made and the precaution taken by the court and
> counsel to prevent such remarks from having a
> prejudicial effect. It is the duty of the trial judge to
> take affirmative steps to attempt to cure harm, once
> an offensive remark has been objected to. However,
> there are certain instances where the comments of
> counsel are so offensive or egregious that no curative
> instruction can adequately obliterate the taint.

*Young v. Washington Hospital*, 761 A.2d 559, 561-62 (Pa. Super. 2000) (citations omitted).

The Pennsylvania Rules of Evidence define "hearsay" as a statement that:

> (1) the declarant does not make while testifying at the current
> trial or hearing; and
>
> (2) a party offers in evidence to prove the truth of the matter
> asserted in the statement.

Pa.R.E. 801(c)(1)-(2). Generally, hearsay is not admissible. *See* Pa.R.E. 802. Finally, we note: "The law presumes that the jury will follow the instructions of the court." *Brown v. Halpern*, 202 A.3d 687, 707 (Pa. Super. 2019).

On appeal, Husband contends that in the Defendants' opening argument, defense counsel, "with no intention of calling [Wife's father or daughter] to testify subject to cross-examination at trial," made "repeated references to highly inflammatory hearsay testimony presented during the Family Court proceeding . . . namely, that [Husband] was a 'puppet master' who bullied [Wife], secluded her and her grandchildren from her family,

- 12 -

argued with [Wife's] daughter . . . , threw a baby bottle at her, and kicked her out of the house." Husband's Brief at 30-31. Husband recounts that the trial court "admonished counsel" that "it look[ed] an awful lot like hearsay." *Id*. at 31. However, Husband maintains, defense counsel "doubled down by raising the inflammatory hearsay . . . again during [Wife's] direct examination." *Id*. Husband acknowledges the trial court sustained his objection to this questioning, but argues the court should have given — but failed to give — "a prompt and specific instruction to the jury to disregard any references to whether [Wife's] father and daughter testified at the Family Court proceeding." *Id*. at 31-32. Husband further claims that the Defendants' "repeated violation of the trial court's order" amounted to "extraordinary circumstance[s]," not "alleviated by the trial court's belated, benign and ambiguous instruction at the close of the case." *Id*. at 32-33. Husband concludes the trial court's actions allowed "the jury to find that although [the Defendants] breached the contract, [he] was the 'puppet master' and cause of his own damages." *Id*. at 24, 29. Husband avers he is entitled to a new trial.[4]

---

[4] Husband acknowledges the trial court's opinion that he could have called Wife in his own case in chief, but asserts, without further explanation, that "she would have been a hostile witness." Husband's Brief at 28. As this discrete issue did not arise in the trial proceedings, we do not address it on appeal.

The trial court addressed Husband's claim as follows. Following Husband's objection to the Defendants' opening argument, the trial

> court ruled that any further statements substantiating the Family Court testimony of persons other than [Husband and Wife] would be ruled inadmissible, and subject to corrective instruction.
>
> During [the] Defendants' case in chief, the court permitted [Wife] to testify as to her own Family Court testimony[, but] sustained [Husband's] objection when she was asked whether her father and daughter testified on her behalf.
>
> When charging the jury, the court instructed the jurors that they "may consider testimony provided by [Husband and Wife] [from the Family Court hearing," [but] they "may not consider the testimony of any other person who may have appeared at that hearing. Given the absence of extraordinary circumstances, a curative instruction was adequate to cure any prejudice to [Husband]. The jury is presumed to have heeded the instruction. The references to the Family Court testimony did not prejudice [Husband] or warrant a mistrial.

Trial Court Opinion, 1/25/24, at 8 (citations omitted and paragraph break added).

We address Husband's various claims *seriatim*. First, we disagree with his premise — that the Defendants' statements in opening argument met the definition of hearsay. It is clear that the Defendants' attorney did not offer his own opening argument statements into evidence. **See** Pa.R.E. 801(c)(2) (defining hearsay, in part, as a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement"); **see also** N.T., 6/8/23, at 23 (trial court instructing, in final jury charge: "The lawyers are not witnesses and what they say is not evidence in the case. Their opening

- 14 -

statements, . . . arguments, . . . questions, . . . comments, closing arguments, none of that is evidence").

Nevertheless, we construe Husband to be challenging defense counsel's alleged improper comments, and find no abuse of discretion. *See Hill*, 557 A.2d at 765-66. We agree with the trial court that its jury instruction ameliorated any prejudice caused by the Defendants' counsel's statements, and we presume the jury followed the instruction. *See Young*, 761 A.2d at 561-62; *see also Brown*, 202 A.3d at 707. We reject Husband's claim that the statements were so inflammatory as to cause extraordinary circumstances warranting a new trial. Instead, when considered against the voluminous testimony and arguments over the three-day jury trial, the attorney's statements were not "so offensive or egregious that no curative instruction can adequately obliterate the taint." *Young*, 761 A.2d at 561-62.

Next, we determine no relief is due on Husband's claims concerning the Defendants' direct examination of Wife. The Defendants asked Wife about the testimony *she* gave in Family Court, as permitted by the trial court. The following exchange then occurred:

> [Defendants' counsel: Y]our father also testified at the [Family Court] hearing[,] didn't he?
>
> [Wife:] Yes, he did.
>
> Q. All right. And your daughter also testified at the hearing, correct?
>
> A. Yes.

Q. And she testified on your behalf.

A. Yes.

Q. In any effort to invalidate —

N.T., 6/7/23, at 38.

At this juncture, Husband objected on hearsay grounds. We emphasize, and Husband acknowledges, that the trial court **sustained** his hearsay objection. **See id**. at 39. As the court ruled in his favor, before Wife responded to the questions, we disagree that he is entitled to any relief in this regard.

Finally, to the extent that Husband challenges the sufficiency or timeliness of the trial court's jury instruction, we conclude he has waived such an issue, as he did not raise an objection before the trial court. **See Morrissey v. St. Joseph's Preparatory School**, 323 A.3d 792, 804 (Pa. Super. 2024) (stating that "to preserve a jury-instruction challenge for appeal — absent a specific contemporaneous objection — a litigant must file a proposed point for charge, and the trial court must explicitly accept or reject the proposed instruction"); **see also** N.T., 6/8/23, at 14 (trial court stating during charging conference, without objection from Husband, that it would instruct the jury it could consider Family Court testimony given by Husband and Wife, but not by any other person at that hearing), 42 (neither party raising any objection at the conclusion of the jury charge). For the foregoing reasons, we conclude no relief is due on Husband's second issue.

In his third issue, Husband avers the trial court erred in limiting his cross-examination of Wife. This Court has explained:

The scope of cross-examination is within the sound discretion of the trial court, and we reverse only for an abuse of discretion. In exercising this discretion, the trial court may limit cross-examination due to concerns that the matter is collateral, would likely confuse or mislead the jury, or would waste time.

*Kimble v. Laser Spine Institute, LLC*, 264 A.3d 782, 797 (Pa. Super. 2021) (*en banc*) (citations omitted). Additionally:

The admissibility of evidence is within the sound discretion of the trial court, and we will not overturn its decisions in this regard absent an abuse of discretion or misapplication of law. We also do not reverse such a ruling unless the objecting party sustained prejudice. "An abuse of discretion is not merely an error of judgment. It requires a showing of manifest unreasonableness, partiality, ill will, or such lack of support as to be clearly erroneous. Under this standard, the party challenging the trial court's discretion on appeal bears a heavy burden."

*Id*. at 795 (citations omitted).

Pennsylvania Rule of Evidence 611(b) provides: "Cross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility, however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination. . . ." Pa.R.E. 611(b).

First, Husband asserts the trial court erred in finding Wife's direct examination "was limited to what happened at the meetings with [him] and [Attorney] Steward in December 2014 and at the Family Court proceeding." Husband's Brief at 27. Instead, Husband insists, the Defendants asked Wife

questions, which "elicited and implied" that the "Family Court invalidated the postnuptial agreement" because Wife signed it under duress from him, and not because of the Defendants' "legal malpractice." **Id**. (some punctuation omitted). Husband thus denies that his questions exceeded the scope of direct examination. Husband avers the trial court's ruling prejudiced him, "by allowing the jury to hear evidence that the postnuptial agreement was invalidated due to [his] bullying[,] without affording [him] the opportunity to cross-examine his accuser."[5] **Id**. at 25 (some punctuation omitted).

In addressing Husband's issues, the trial court first summarized:

> During trial, [Wife] was asked on direct examination by [the] Defendants' counsel about any meetings she had with [Attorney] Steward in his capacity as an attorney prior to December 2014, [when Husband and Wife executed the

---

[5] Husband also argues that the trial court erred in precluding him "from asking questions attacking" Wife's credibility, "in response to her [direct examination testimony] that she signed the postnuptial agreement under duress and" without knowing the substance of it. Husband's Brief at 25 (some punctuation omitted). Furthermore, Husband avers he sought to address Wife's direct examination testimony that she did not know the contents of the postnuptial agreement at the time she signed it. **See id**. at 28.

We determine Husband has waived both these discrete claims — concerning Wife's credibility and her awareness of the substance of the postnuptial agreement — as he did not raise them before the trial court. **See** N.T., 6/7/23, at 43 (Husband's counsel arguing, in response to the Defendants' objection that his questions exceeded the scope of cross-examination, that "the entire testimony is intended to show duress [*sic*]" and "this goes directly to what [Wife's] intentions were when she was entering into the" postnuptial agreement). **See also** Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); **Morrissey**, 323 A.3d at 805 n.9 (stating that "[a] new and different theory of relief may not be successfully advanced for the first time on appeal").

postnuptial agreement,] the character of the meetings she had with [Attorney] Steward regarding the postnuptial agreement, and the 2016 Family Court hearing.

On cross-examination, [Husband] asked: 1) whether it was true that by December 2014, she was already looking for places to live; 2) whether she previously testified that [Attorney] Steward was truthful with her during the meetings; and 3) whether [Attorney] Steward told her that she could not waive child-support in the agreement. . . .

Trial Court Opinion, 1/25/24, at 6 (citations omitted and paragraph break added).

The trial court considered Husband's arguments that his cross-examination questions: (1) "were meant to 'undercut the false narrative[,] elicited during . . . direct examination[,] that [Wife] entered into the post-nuptial agreement under duress or to save her marriage;'" and (2) went "directly to what [Wife's] intentions were when she was entering into the" postnuptial agreement. *Id*. (citation omitted). The court found:

Although [the] Defendants . . . asked [Wife] whether she showed distress in front of [Attorney] Steward during their . . . meeting, she was not asked about her subjective beliefs about signing the agreement. [The] Defendants' direct examination did not concern [Wife's] intentions. [She] was asked about the character of her meetings with [Attorney] Steward, and the 2016 Family Court hearing. Her testimony was limited to what she expressed to [Attorney] Steward, not what she may have felt or believed about signing the agreement. . . .

*Id*. at 6-7 (citations omitted).

After careful review of the record, we determine the trial court did not abuse its discretion in finding the above questions to Wife exceeded the scope of direct. *See Kimble*, 264 A.3d at 797. First, we conclude the trial court

properly summarized the scope of Wife's direct examination — which we note spanned seventeen pages of trial testimony.[6]  On appeal, Husband does not identify his particular questions, posed to Wife, ruled by the trial court to have exceeded the scope of direct.  We reiterate that they were: (1) whether Wife was "already looking for other places to live" in December 2014; (2) whether Wife had previously testified that Attorney Steward was not truthful with her; and (3) whether Attorney Steward told her that she could not "waive child support in the" postnuptial agreement.  N.T., 6/7/23, at 42, 48, 49.

Even in accepting Husband's premise that Wife's direct examination pertained to whether she signed the postnuptial agreement under duress,

---

[6] Wife testified, *inter alia*, as follows: (1) in December 2014, she and Husband initially approached Attorney Steward to "discuss . . . wills;" (2) however, at that meeting, Husband also discussed a postnuptial agreement, of which Wife was not previously aware; (3) at the meeting, she and Husband argued about "the real estate" — however, Wife also testified that Husband did not "say anything" during this argument; (4) after the meeting, Husband told Wife that if she wished to continue the marriage, it "would be a problem" if she did not sign the postnuptial agreement; (5) subsequently, Wife called Attorney Steward and "waived all [her] rights [to] the real estate and all aspects of the contract [*sic*];" (6) eleven days after the meeting with Attorney Steward, Husband and Wife met with him again and signed the postnuptial agreement; and (7) when asked whether she "show[ed] any distress to" Attorney Steward at that meeting, Wife stated she "was under a lot of stress" and may have been crying, and she did not read the agreement.  N.T., 6/7/23, at 25-29, 32.  On direct examination, Wife also testified that she previously testified, at the Family Court hearing, to the following: (1) Husband had told her that if she did not sign the postnuptial agreement, there would be no marriage; and (2) at that time, her "priority was not the finances, [but rather] to save [the] marriage."  *Id*. at 37-38.  Finally, at this trial, Wife testified that the Family Court did not provide a reason for invalidating the postnuptial agreement. *See id*. at 40.

Husband does fails to explain how each of his above questions related to whether Wife signed the postnuptial agreement under duress. Again, he does not even identify the particular questions he now argues the trial court should have permitted. In the absence of discussion of these particular questions, we conclude no relief is due on Husband's third issue. *See also* Pa.R.A.P. 2119(a) (providing that appellant's argument shall include "such discussion and citation of authorities as are deemed pertinent").

In his final issue, Husband avers the trial court erred in "granting [the] Defendants' motion *in limine* limiting [his] legal expert testimony regarding damages." Husband's Brief at 34. In support, he first argues the trial court granted the motion "under the mistaken belief that Pennsylvania law limited damages in a malpractice case to underlying legal fees." Husband's Brief at 35. Husband maintains that instead, "[c]onsequential damages are appropriate in a breach of contract case." *Id*. Next, Husband acknowledges that the trial court subsequently reversed its ruling, permitting him to present a calculation of compensatory damages. However, Husband insists, "by then, the damage had been done because [the legal expert's] testimony was already prerecorded in accordance with the trial court's ruling," and he "could not recall [her] to re-testify at trial, [as] she had already testified." *Id*. at 36. Husband alleges he could not present evidence in support of his claim for damages.

In denying relief on this issue, the trial court reiterated that on the verdict slip, the jury found: (1) the Defendants breached the contract with Husband; (2) but the breach was **not** a cause of damages to Husband; and thus (3) the jury did not reach the issue of the amount of damages to award Husband. The court found Husband did not suffer prejudice, as the expert's excluded testimony pertained to an issue not reached by the jury. The court stated: "The excluded testimony would have concerned whether [his] damages included compensatory damages other than . . . legal fees, such as what he would have received had the postnuptial agreement been enforced." Trial Court Opinion, 1/25/24, at 9. Accordingly, the court concluded, any "exclusion of the testimony was not material to the outcome of the case." **Id**.

We agree with the trial court's analysis, and similarly conclude that because the jury found no causation, it did not reach the issue — the amount of damages to award — that was the subject of the excluded expert testimony. Thus, any evidence concerning the nature or amount of damages was not material to the outcome of the case.

Furthermore, we conclude no relief is due on Husband's claim that the trial court's reversal of its ruling was untimely — because "by then, the damage had been done because [his expert's] testimony was already

prerecorded in accordance with the trial court's [initial] ruling."[7] Husband's Brief at 36 (unnecessary capitalization omitted). The Defendants respond that Husband "chose to videotape his expert's testimony before trial *in lieu* of having her testify live at trial." Defendants' Brief at 33. Additionally, the Defendants reason that after the trial court reversed its ruling, Husband "chose to neither call [the expert witness] in person to testify during his case in-chief nor recall her in rebuttal. . . . As a result, any alleged prejudice was caused solely by [Husband's] own trial tactics." **Id**.

In his reply brief, Husband dismisses the Defendants' above observations as "nonsense." Husband's Reply Brief at 9. He insists, without citation to legal authority, that his expert "had already testified," and the fact that her "videotaped testimony had not been played for the jury does not mean that [she] had not already provided her sworn testimony." **Id**.

_____

[7] Husband does not cite the place in the record where he raised this argument, thus preserving it for appeal. **See** Pa.R.A.P. 2117(c) (requiring appellant's statement of the case to cite the place in the record where they raised or preserved the issue for appeal), 2119(e).

Meanwhile, we observe the certified record does not include the trial court's order reversing its motion *in limine* ruling, to permit expert testimony concerning damages. Neither the parties nor the trial court explain how the ruling was announced to the parties, given the short time period between: the court's June 5, 2023 email stating it was reconsidering its order; and the June 6, 2023 commencement of trial. Thus, we cannot review whether, for example, Husband argued he was not able to call his expert to testify at trial, or requested additional time to prepare for trial in light of the trial court's ruling. In any event, Husband makes no claim on appeal that he did.

Husband's arguments do not merit relief. Again, he cites no legal authority for the proposition that once a ***pre-trial deposition*** has been videotaped, a party may not obtain additional testimony from that witness for ***trial***. ***See*** Pa.R.A.P. 2119(a). Additionally, we disagree with his premise that his expert had in fact "already testified" at trial, and he "could not recall [her] to re-testify." Husband's Brief at 36. The fact that the expert witness gave "sworn testimony" in a ***pre-trial*** deposition, regardless of whether Husband subsequently played the video of her deposition at trial, does not mean the expert in fact 'testified" at a trial that had not yet commenced. Husband's Reply Brief at 9. Instead, Husband merely presented the videotaped deposition as an exhibit. Accordingly, we conclude no relief is due on Husband's fourth issue.

For the foregoing reasons, we affirm the judgment entered upon the jury's verdict in favor of the Defendants. As we adopt part of the trial court's opinion in disposing of this appeal, we direct that in the event of further proceedings, the parties shall attach a copy of the Honorable Ann M. Butchart's January 25, 2024, trial court opinion to any filings of this memorandum.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>4/11/2025</u>